# 2004 DTA 96

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL II**

PROFESSIONAL INSURANCE AGENTS OF PUERTO RICO
AND THE CARIBBEAN, INC. (PIA)
Apelante

v.

FERMÍN M. CONTRERAS GÓMEZ, EN SU CARÁCTER DE COMISIONADO DE SEGUROS DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO; EL ESTADO LIBRE ASOCIADO DE PUERTO RICO, POR CONDUCTO DE ANABELLE RODRÍGUEZ, SECRETARIA DE JUSTICIA DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO
Apelados

Núm. KLAN-03-01430

San Juan, Puerto Rico, a 23 de abril de 2004

Panel integrado por su Presidente, el Juez Brau Ramírez,
la Juez Pabón Charneco y el Juez Rivera Martínez

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

La parte apelante es Profesional Insurance Agents of Puerto Rico and the Caribbean, Inc. ("*P.I.A.*"), una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, dedicada, entre otras cosas, a actuar como agente de seguros para distintas aseguradoras en Puerto Rico.

Como parte de sus gestiones como agente de seguros, P.I.A. recibe pagos de primas de seguros de parte de personas y/o entidades aseguradas, los cuales son remitidos a las compañías aseguradoras. P.I.A. ha llevado a cabo dichas actividades en relación con la expedición de seguros a condominios.

El caso de autos está relacionado a varios procesos administrativos llevados a cabo por el Comisionado de Seguros entre 1996 y junio de 2001, supuestamente relacionados al cobro de primas de seguros a Condominios por distintas agencias de seguros, las que resultaban en exceso a lo permitido por ley. Los procedimientos en cuestión parecen haber envuelto varias compañías de seguros relacionadas con P.I.A. La apelante, sin embargo, no fue parte de dichos procedimientos.

La apelante alega que, como resultado de dichos trámites administrativos, el Comisionado y varias de las compañías aseguradoras llegaron a transacciones de carácter confidencial mediante las cuales algunas de dichas compañías habían admitido que habían recibido pagos en exceso de lo permitido por Ley y habían acordado la devolución de las primas. Aunque la apelante no participó en los procedimientos administrativos, dichos acuerdos conllevan la posibilidad de que la apelante sea penalizada por haber cobrado primas en exceso, a nombre de las compañías aseguradoras y/o de que se afecte, de otro modo, por las estipulaciones realizadas entre el Comisionado y las aseguradoras sobre la cantidad a cobrarse por primas en este tipo de casos.

179

P.I.A. se queja de que los términos y condiciones de los acuerdos entre el Comisionado de Seguros y las aseguradoras en cuestión han permanecido en secreto, a pesar de tratarse de procedimientos investigativos llevados a cabo por una agencia pública. La apelante plantea que se desconocen los criterios utilizados por el Comisionado para requerir a las compañías aseguradoras que devolvieran las primas alegadamente cobradas en exceso o rebajaran las primas cobradas. Alega que dicha actuación constituye una determinación arbitraria del Comisionado de Seguros que descansa únicamente en el capricho y voluntad de dicho funcionario.

P.I.A. solicitó al Comisionado de Seguros que le brindara acceso a los acuerdos en cuestión, a lo que dicha agencia se negó.

En septiembre de 2002, la apelante instó la presente acción sobre sentencia declaratoria y *mandamus* ante el Tribunal de Primera Instancia, Sala Superior de San Juan, contra el Comisionado de Seguros y el Estado Libre Asociado, solicitando que se le brindara acceso a, entre otros documentos relacionados a los procesos administrativos mencionados, los acuerdos confidenciales supuestamente otorgados por el Comisionado de Seguros y las Compañías Aseguradoras.

El Comisionado contestó la demanda, negando las alegaciones.

Luego de otros incidentes, el 22 de octubre de 2002, el E.L.A. presentó una moción de desestimación, alegando que las compañías aseguradoras que habían participado en el procedimiento ante el Comisionado resultaban partes indispensables en el caso. El E.L.A. también planteó que la actuación del Comisionado no resultaba revisable y que la solicitud de la parte apelante resultaba improcedente.

Ante dichos señalamientos, la apelante solicitó que se le informara la identidad de las compañías aseguradoras que habían suscrito los acuerdos confidenciales con el Comisionado, lo que fue informado por éste. Algunas de éstas comparecieron voluntariamente al litigio. Las demás fueron emplazadas.

Luego de otros trámites, el 9 de enero de 2003, se celebró un señalamiento ante el Tribunal.

En esa ocasión, las partes informaron que habían llegado a un acuerdo para resolver la controversia. Se le informó al Tribunal que las partes estaban dispuestas a estipular que los acuerdos objeto del litigio permanecieran confidenciales, aclarándose, sin embargo, que ya las prestaciones asociadas a dichos acuerdos habían sido ejecutadas, sin que ello conllevara consecuencia adversa alguna para la apelante y que las compañías aseguradoras se comprometían a no reclamar a ésta.

El Tribunal concedió a las partes un término para presentar el correspondiente acuerdo, suscrito por todas las partes. Posteriormente, se preparó un borrador de la estipulación. El 17 de marzo de 2003, sin embargo, el Comisionado de Seguros notificó que no podía suscribir el acuerdo propuesto, *"toda vez que su contenido no se ajusta a lo dispuesto en el Código de Seguros y el Comisionado no puede con su firma avalar una obligación que es contraria a derecho"*. En su comunicación, el Comisionado explicó:

*"[E]n estricto derecho, un ajuste en primas implica, entre otras cosas, un ajuste en comisiones. En el caso de autos, ello no ha sido así, toda vez que las compañías aseguradoras decidieron asumir ellas la pérdida y no realizar ajustes en las comisiones pagadas. Sin embargo, eso fue una determinación tomada por las aseguradoras, determinación que no fue avalada por la Oficina del Comisionado de Seguros, por lo que el Comisionado no puede ahora comparecer en un documento tomando conocimiento de ello."*

Luego de otros incidentes, el 15 de octubre de 2003, el Tribunal de Primera Instancia emitió la sentencia apelada, desestimando la demanda.

En su sentencia, el Tribunal de Primera Instancia observó que se había concedido un término a las partes para someter el acuerdo transaccional, lo que éstas no habían cumplido. El Tribunal entendió que la parte apelante había admitido las defensas levantadas por el E.L.A. en su moción de desestimación, esto es, que el Tribunal de Primera Instancia carecía de jurisdicción para revisar la corrección de la actuación del Comisionado de Seguros, que faltaban partes indispensables y que las alegaciones presentadas no constituían una acción justiciable.

El Tribunal procedió a desestimar la demanda sumariamente.

Insatisfecha, la parte apelante acudió ante este Tribunal.

## II

En su recurso, la parte apelante plantea que el Tribunal de Primera Instancia erró al desestimar sumariamente su demanda. El error es evidente.

La norma en nuestra jurisdicción es que una demanda debe ser desestimada de su faz solamente cuando de un examen de las alegaciones se desprenda que la parte demandante no tendría derecho a remedio alguno bajo cualesquiera hechos que puedan ser probados y cuando la demanda no puede ser, de otro modo, enmendada para subsanar cualquier deficiencia en las alegaciones. *Rivera v. Jaume*, 157 D.P.R. ___ (2002), **2002 J.T.S. 107**, a la pág. 1,525; *Luán Invest. v. Rexach Const. Co.*, 152 D.P.R. ___ (2000), **2000 J.T.S. 196**, a la pág. 552; *Roldán v. Lutrón, S.M., Inc.*, 151 D.P.R. ___ (2000), **2000 J.T.S. 133**, a la pág. 27; *Dorante v. Wrangler of P.R.*, 145 D.P.R. 408, 414 (1998); *Torres Capeles v. Rivera Alejandro*, 143 D.P.R. 300, 309 (1997); *Agosto v. Mun. de Río Grande*, 143 D.P.R. 174, 178 (1997); *Pressure Vessels de P.R. v. Empire Gas P.R.*, 137 D.P.R. 497, 505 (1994); *Granados v. Rodríguez Estrada I*, 124 D.P.R. 1, 48 (1989); *Clemente v. Depto. de la Vivienda*, 114 D.P.R. 763, 771 (1983).

Al considerar lo anterior, el juzgador viene obligado a dar por ciertas todas las alegaciones bien hechas de la demanda e interpretarlas de la forma más favorable a la parte demandante. *Roldán v. Lutrón, S.M., Inc.*, **2000 J.T.S. 133**, a la pág. 27; *Harguindey Ferrer v. U.I.*, 148 D.P.R. 13, 30 (1999); *Dorante v. Wrangler of P.R.*, 145 D.P.R. a las págs. 413-414.

Debe recordarse que, bajo nuestro ordenamiento, el demandante no viene obligado a realizar alegaciones minuciosas y técnicamente perfectas, sino que se le permite limitarse a bosquejar a grandes rasgos su reclamación, mediante una exposición sucinta y sencilla de los hechos. *Tenorio y Otros v. Hosp. Dr. Pila*, 159 D.P.R. ___ (2003), **2003 J.T.S. 113**, a la pág. 1,189; *León v. Rest. El Tropical*, 154 D.P.R. ___ (2001), **2001 J.T.S. 84**, a la pág. 1,328; *Sánchez v. Aut. de los Puertos*, 153 D.P.R. ___ (2001), **2001 J.T.S. 34**, a la pág. 967; *Dorante v. Wrangler of P.R.*, 145 D.P.R. a la pág. 413; *Agosto v. Mun. de Río Grande*, 143 D.P.R. a la pág. 178.

En el caso de autos, la parte apelante ha solicitado acceso a los acuerdos confidenciales suscritos por el Comisionado y las compañías aseguradoras de epígrafe.

No se discute que se trata de documentos públicos. Véase, 26 L.P.R.A. secs. 212 y 218; véase, además, 3 L.P.R.A. sec. 1001. Como tal, documentos de este tipo están sujetos a inspección por la ciudadanía.

El Tribunal Supremo de Puerto Rico ha reconocido, en este sentido, que los ciudadanos de nuestra jurisdicción tienen un derecho de acceso a información pública, el cual es un corolario necesario de los derechos de libertad de expresión, prensa y asociación establecidos por la Sección 4 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico. *Nieves Falcón v. Junta de Libertad Bajo Palabra*, 160 D.P.R. ___ (2003), **2003 J.T.S. 130**, a la pág. 1,354; *Noriega v. Gobernador*, 130 D.P.R. 919, 937 (1992); *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 227 (1987); *Santiago v. Bobb y El Mundo, Inc.*, 117 D.P.R. 153, 159 (1986); *Soto v. Srio. de Justicia*, 112 D.P.R. 477, 485 (1982).

El Tribunal Supremo de Puerto Rico ha aclarado que todo ciudadano, por el sólo hecho de serlo, tiene interés especial para solicitar examinar documentación pública. *Nieves Falcón v. Junta de Libertad Bajo Palabra*, **2003 J.T.S. 130**, a la pág. 1,354; *Ortiz v. Dir. Adm. de los Tribunales*, 152 D.P.R. ___ (2000), **2000 J.T.S. 157**, a la pág. 185.

Aunque no se trata de un derecho absoluto, el peso corresponde al Estado para justificar a plenitud cualquier reclamo de confidencialidad, el cual deberá ser examinado de la forma más favorable a favor del reclamante y en contra de la solicitud. *Nieves Falcón v. Junta de Libertad Bajo Palabra*, **2003 J.T.S. 130**, a las págs. 1,354-5; *López Vives v. Policía de P.R.,* 118 D.P.R. a la pág. 233.

Como regla general, el Estado sólo puede reclamar válidamente la secretividad de información pública en un número limitado de supuestos, a saber, cuando: (1) una ley (o un reglamento) así específicamente lo declara; (2) la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos; (3) revelar la información puede lesionar derechos fundamentales de terceros; (4) se trate de la identidad de un confidente conforme a la Regla 32 de Evidencia, 32 L.P.R.A. Ap. IV, R. 32; o (5) sea información oficial conforme a la Regla 31 de Evidencia. Véanse, *Nieves Falcón v. Junta de Libertad Bajo Palabra*, **2003 J.T.S. 130**, a la pág. 1,354; *Ortiz v. Dir. Adm. de los Tribunales*, **2000 J.T.S. 157**, a la pág. 186; *Angueira v. J.L.B.P.,* 150 D.P.R. 10, 24 (2000).

El examen judicial al cual deberá someterse cualquier reclamo de confidencialidad de documentos e información pública dependerá de la excepción que invoque el Estado como fundamento *vis à vis* el pedido de información. *Ortiz v. Bauermeister*, **2000 J.T.S. 157**, a la pág. 186.

Cuando el gobierno invoca una ley o reglamento como fundamento para negar al ciudadano el acceso a información pública, la regulación debe satisfacer un escrutinio judicial **estricto**. En concreto, deben cumplirse los siguientes requisitos: (a) caer dentro del poder constitucional del gobierno; (b) propulsar un interés gubernamental apremiante; (c) que tal interés no esté directamente relacionado con la supresión de la libertad de expresión; y (d) que la restricción a la libertad de expresión no sea mayor de lo necesario para propulsar dicho interés. *Nieves Falcón v. Junta de Libertad Bajo Palabra,* **2003 J.T.S. 130**, a la pág. 1,354; *Ortiz v. Dir. Adm. de los Tribunales*, **2000 J.T.S. 157**, a la pág. 186.

Ninguna legislación que no contenga estándares apropiados para determinar el tipo de documento e información que habrá de estar sujeta al escrutinio público y que, por el contrario, establezca una norma de confidencialidad absoluta, puede superar el escrutinio constitucional. *Nieves Falcón v. Junta de Libertad Bajo Palabra*, **2003 J.T.S. 130**, a la pág. 1,354; *Soto v. Srio. de Justicia*, 112 D.P.R. a la pág. 495.

El derecho de acceso a los documentos públicos implica la obligación correlativa de permitir dicha inspección, el cual puede ser reclamado mediante un *mandamus. Dávila v. Superintendente de Elecciones*, 82 D.P.R. 264, 277-279 (1960).

En *Ortiz v. Dir. Adm. de los Tribunales*, **2000 J.T.S. 157**, un caso parecido a la situación de autos, el Tribunal Supremo de Puerto Rico resolvió que no cabía invocar la confidencialidad de un proceso investigativo administrativo, una vez culminada la investigación y terminado el proceso. **2000 J.T.S. 157**, a la pág. 189.

En la situación de autos, según hemos visto, la parte apelante ha solicitado la inspección de los procesos investigativos llevados a cabo por el Comisionado con relación a las compañías aseguradoras mencionadas, que culminó en ciertos acuerdos entre las partes para la devolución o rebaja de las primas de seguro, los que se mantienen confidenciales. Es evidente que, según se indica en la comunicación del Comisionado de Seguros del 17 de marzo de 2003, dichos acuerdos pueden afectar a la parte apelante, la que posiblemente venga obligada a devolver a las compañías de seguro parte de sus comisiones por primas cobradas en exceso.

De su faz, por lo tanto, no puede decirse que la reclamación de la apelante carezca de mérito o que la misma no pueda ser adjudicada por el Tribunal mediante la concesión de un remedio de *mandamus*. *Nieves Falcón v. Junta de Libertad Bajo Palabra*, **2003 J.T.S. 130**, a la pág. 1,354; *Ortiz v. Dir. Adm. de los Tribunales*, **2000 J. T.S. 157**, a la pág. 185; *Noriega v. Gobernador*, 130 D.P.R. a la pág. 937; *López Vives v. Policía de P.R.*, 118 D.P.R. a la pág. 227; *Santiago v. Bobb y El Mundo, Inc.*, 117 D.P.R. a la pág. 159.

Tampoco cabe admitir la contención levantada por el Estado de que la solicitud de la apelante no puede prosperar por la falta de inclusión en el caso de las compañías aseguradoras, quienes son partes indispensables. No está claro que dichas entidades sean efectivamente necesarias para la concesión del remedio solicitado por la parte apelante, que es el criterio adoptado por la Regla 16 de las de Procedimiento Civil para determinar cuándo una parte resulta ser indispensable para un caso. *Sánchez v. Sánchez*, 154 D.P.R. ___, **2001 J.T.S. 112**, a la pág. 1573; *Mun. de Ponce v. A.C., et al*, 153 D.P.R. ___ (2001), **2001 J.T.S. 3**, a la pág. 653; *Fred y otros v. E.L.A.*, 150 D.P.R. 599, 608-609 (2000); *Vencedor Dev. Corp. v. Aut. de Carreteras*, 136 D.P.R. 456, 460 (1994); *Hernández Agosto v. López Nieves*, 114 D.P.R. 601, 604-608 (1983); *Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407, 412-413 (1982); *Fuentes v. Tribunal de Distrito*, 73 D.P.R. 959, 981 (1952).

En cualquier caso, según hemos visto, dichas partes fueron oportunamente notificadas del procedimiento y emplazadas y/o traídas ante la jurisdicción del Tribunal, por lo que no existiría defecto alguno de parte indispensable.

No percibimos fundamento válido alguno en derecho, de este modo, para la determinación del Tribunal de Primera Instancia de desestimar sumariamente la demanda de la apelante. La actuación del Tribunal parece haber estado motivada más bien por la omisión de las partes de llegar a una transacción, según habían anunciado inicialmente al Tribunal. Pero ello no fue atribuible a la parte apelante, sino a la existencia de reparos por parte del Comisionado, quien entendió que no debía participar en el acuerdo entre la apelante y las compañías de seguros.

En esas circunstancias, lo que procedía era que el Tribunal continuara con los procedimientos y adjudicara los planteamientos ante sí.

Por los fundamentos expresados, se revoca la sentencia apelada. Se devolverá el caso al Tribunal de Primera Instancia para procedimientos consistentes con este dictamen.

Lo pronunció y lo manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIO 2004 DTA 96

**1.** Estas compañías son: ACE Insurance Company; National Insurance Co.; Pan American Insurance Co.; Puerto Rican American Insurance Co.; Federal Insurance Co.; Preferred Risk Insurance Co., y Cooperativa de Seguros Múltiples.