EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Katherine Angueira Navarro Peticionaria v. Junta de Libertad Bajo Palabra; Enrique García, Presidente; Héctor Martínez y otros Recurridos Convicto Agapito Pérez Cruz Confinado Núm. 7-74521 | Certiorari 2000 TSPR 2 |

Número del Caso: CC-1999-0240

Fecha: 11/01/2000

Tribunal de Circuito de Apelaciones:  Circuito Regional I

Juez Ponente: Hon. Feliciano Acevedo

Abogados de la Parte Peticionaria: Por Derecho Propio

Materia: Revisión de Decisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Katherine Angueira Navarro

    Peticionaria

        v.

Junta de Libertad Bajo                CC-1999-240     Certiorari
Palabra; Enrique García,
Presidente; Héctor
Martínez y otros

    Recurridos

Convicto Agapito Pérez Cruz
Confinado Núm. 7-74521

Opinión del Tribunal emitida por el Juez Asociado señor Negrón García

San Juan, Puerto Rico, a 11 de enero de 2000

**Opinión**, "concepto o parecer que se forma de una cosa cuestionable".[1] **Este recurso es vivo ejemplo del principio rector de que "para juzgar u opinar, hay que conocer".**

I

En marzo de 1978, Katherine Angueira Navarro fue víctima de los delitos de secuestro, robo y violación.[2] Por estos delitos resultaron culpables y sentenciados Ramón Pérez Cruz, Agapito Pérez Cruz y Jorge L. Rivera Cruz.

---

[1] Diccionario de la Lengua Española, Madrid, (1992) pág. 1048.

[2] Arts. 137, 173 y 99, Código Penal de Puerto Rico, (33 L.P.R.A. secs. 4178, 4279 y 4061).

Después de la liberación bajo palabra de Ramón Pérez Cruz, el 17 de abril de 1996 la Junta le notificó a Angueira Navarro que tenía ante su consideración igual solicitud de otro de sus ofensores, Agapito Pérez Cruz y ella tenía derecho a comparecer por escrito ante la Junta a exponer su **opinión**. Idénticas notificaciones le fueron cursadas el día 30 del mismo mes y el 14 de mayo. Por escrito, Angueira Navarro expresó su interés en participar en esa determinación. Pidió vista sin la presencia de su ofensor Agapito, para opinar personalmente. A tal efecto, solicitó examinar los expedientes de los tres ofensores y: 1) copia del reglamento aplicable a la participación de la víctima en el procedimiento; 2) una explicación de por qué Agapito Pérez Cruz había estado bajo la jurisdicción de la Junta desde 1990; 3) historial de cualquier trámite previo ante la Junta; 4) información sobre incidentes violentos e infracciones a la ley cometidos por Agapito Pérez Cruz después de la convicción por los delitos cometidos en su contra; 5) información referente a la rehabilitación de Agapito Pérez Cruz; 6) información sobre el cumplimiento de la sentencia de Agapito Pérez Cruz en cuanto a bonificaciones, acciones disciplinarias, pruebas de sustancias controladas, prueba de HIV y su plan de salida incluyendo la dirección exacta donde iría a residir y a trabajar.

A pesar de estos pedidos específicos, la Junta le envió una nueva notificación sobre su derecho a comparecer por escrito a expresar su opinión; Angueira Navarro se reiteró. Luego de un reseñalamiento, la Junta celebró vista a la cual asistió Angueira Navarro. Sin embargo, ella se negó a exponer su criterio sobre la

posible liberación bajo palabra de Agapito Pérez Cruz hasta tanto examinara su expediente, gestión a su juicio necesaria para opinar informadamente. La Junta denegó acceso por el fundamento de que era confidencial. Luego, el 24 de noviembre de 1997, le notificó que había concedido la libertad bajo palabra.

Inconforme, Angueira Navarro acudió en revisión al Tribunal de Circuito de Apelaciones. Planteó que la Junta erró al no darle oportunidad de ver el expediente. Además, que la Junta incidió al decidir, sin haber aprobado un reglamento que rigiera la participación de la víctima en el procedimiento de concesión de la libertad bajo palabra de su ofensor. Previa comparecencia de la Junta, el 20 de enero de 1999, dicho foro (Jueces Hons. López Vilanova, Cordero y Feliciano Acevedo) confirmó.

A solicitud de Angueira Navarro revisamos.[3]

---

[3] Discute los siguientes señalamientos:

"Erró el Tribunal recurrido al concluir que la JLBP no viene obligada a conceder a la compareciente acceso al expediente; y la información obtenida en el curso de la evaluación de la solicitud de libertad bajo palabra del convicto violador Agapito Pérez Cruz, así como los demás documentos solicitados, en violación de las leyes aplicables y del derecho constitucional de acceso a información gubernamental, para poder emitir una opinión informada sobre la determinación del privilegio de libertad bajo palabra del convicto violador Agapito Pérez Cruz."

- - - - -

"Erró el Tribunal recurrido al concluir que la JLBP viene obligada a proteger la 'confidencialidad y privacidad' del convicto violador."

- - - - -

"Erró el Tribunal recurrido al resolver sin fundamento jurídico la totalidad de los errores que le fueron esbozados."

- - - - -

II

A modo de prólogo examinemos si este recurso no se ha tornado académico por razón de la Junta haber concedido el 24 de noviembre de 1997 este privilegio a Agapito Pérez Cruz.

La doctrina de academicidad constituye una de las manifestaciones concretas del concepto de justiciabilidad, la cual acota los límites de la función judicial. Comisión Estatal de Elecciones v. Dpto. de Estado, res. 16 de diciembre de 1993, 134 D.P.R. ___ (1993). Un caso es académico cuando pierde su carácter adversativo, ya sea por cambios fácticos o judiciales acaecidos durante su trámite judicial, creando una circunstancia en la que la sentencia sería una opinión consultiva. Existen, sin embargo, varias excepciones a la doctrina, a saber, cuando se plantea una cuestión recurrente; si la situación de hechos ha sido modificada por el demandado, pero no tiene características de permanencia; o donde aspectos de la controversia se tornan académicos, pero persisten importantes consecuencias colaterales. El Vocero v. Junta de Planificación, 121 D.P.R. 115 (1988).

La excepción sobre el carácter recurrente o repetitivo de la controversia exige el estudio de tres (3) factores: la probabilidad de la recurrencia; las partes involucradas en el procedimiento; y la probabilidad de que la controversia evada adjudicación o revisión judicial.

---

"Erró el Tribunal recurrido al adoptar múltiples hechos como ciertos que no se sostienen por evidencia del expediente de autos, a la vez que omitió hechos que surgen del expediente, resultando en una errónea interpretación de derecho."

El elemento principal en el proceso de concluir si una determinación afirmativa de academicidad promoverá la finalidad de la autolimitación judicial es la probabilidad de recurrencia. Cuando existe la probabilidad de que la controversia se repita o recurra, los tribunales debemos considerar el asunto planteado a pesar de que el mismo haya advenido académico.

En lo referente a las partes en litigio, hemos señalado que para que aplique la excepción del carácter recurrente no es necesario que al repetirse la controversia ésta afecte a las mismas partes. Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715 (1980).

Además del carácter recurrente o repetitivo del asunto planteado, y las partes en litigio, dicho asunto debe ser de una naturaleza tal que evada su adjudicación o revisión. Esto sucede con mayor frecuencia en aquellas controversias que son de por sí de muy corta duración, aunque pueden existir otras que ocasionen que una controversia eluda la revisión judicial. Asociación de Periodistas v. González Vázquez, 127 D.P.R. 704 (1991).

Al evaluar la procedencia de este recurso, concentramos nuestro análisis en la relación existente entre los eventos que dieron génesis al pleito y la adversidad presente. Bajo estas normas, no albergamos duda de que el caso de autos proyecta, por su singularidad, probabilidades sustanciales de recurrencia sobre controversias similares y, además, por la naturaleza del procedimiento de concesión de libertad bajo palabra, ésta puede ser susceptible de evadir la revisión judicial. Veamos.

Primero, existe una política pública protectora de las víctimas de delitos que pretende, entre otros, promover la integración de la víctima en los procedimientos posteriores a la convicción,[4] concediéndole según veremos, el derecho a opinar. En el trasfondo de hechos no es la primera vez que Angueira Navarro reclama ante los tribunales, al amparo de dicha política, su derecho a examinar el expediente de uno de los confinados agresores objeto de trámites para la concesión de libertad bajo palabra. Angueira Navarro v. Junta de Libertad Bajo Palabra, Ramón Pérez Cruz, parte interesada KLAA9600093. Segundo, reconocemos una posibilidad de recurrencia dado que Jorge L. Rivera Cruz, tercer ofensor de Angueira Navarro, puede ser objeto en el futuro de una evaluación por la Junta. Existe una controversia genuina entre la Junta y Angueira Navarro, que no ha perdido actualidad por la sola liberación de Agapito Pérez Cruz. Tercero, debido a que la participación de la víctima de delito en los procedimientos ante la Junta no es un requisito indispensable para la concesión de la libertad bajo palabra, el privilegio puede ser concedido antes de que los foros judiciales intervengan para reinvindicar posibles derechos de la víctima. Así, la debida participación de una víctima en la determinación de concesión de libertad bajo palabra, puede evadir la **oportuna** revisión judicial.

Evaluados estos factores, concluimos que no existe obstáculo jurídico alguno que impida a este tribunal evaluar el recurso en sus méritos.

---

[4] Ley Núm. 22 de 22 de abril de 1988, Carta de Derechos de

III

A través de sus señalamientos de error, surge como denominador común el argumento de Angueira Navarro de que el Circuito de Apelaciones incidió al confirmar que no tenía acceso del expediente de Agapito Pérez Cruz como parte de su derecho a opinar. Veamos.

Mediante la Ley Núm. 22 de 22 de abril de 1988, la Asamblea Legislativa aprobó la **Carta de Derechos de las Víctimas y Testigos de Delitos**. Con su aprobación, atrás quedó el enfoque tradicional basado en la ficción de que en los delitos contra la persona la lesión se configuraba en abstracto contra la sociedad en general, no el individuo como ser humano, realmente perjudicado. Se estableció así una política pública vigorosa dirigida a proveer protección y asistencia a las víctimas y testigos en los procesos judiciales y en las investigaciones que se realicen a raíz de la comisión de actos delictivos. Entre las garantías consagradas en dicha Carta se destaca el derecho que tiene toda víctima a ser informada de los procedimientos posteriores a la sentencia cuando ésta o un testigo lo solicite a las autoridades pertinentes.

Subsiguientemente, la Asamblea Legislativa expandió esos derechos **para que las víctimas de delito tuvieran la oportunidad real de desempeñar un rol más activo en el procesamiento y rehabilitación del autor del delito**. Mediante la Ley Núm. 90 de 27 de julio de 1995 (4 L.P.R.A. sec. 1501 et seq.) enmendó la Ley de la Junta de Libertad bajo Palabra –Núm. 118 de 22 de julio de

---

las Víctimas y Testigos de Delitos.

1974, según enmendada, 4 L.P.R.A. sec. 1501 et seq.-, **para reconocerle a toda víctima el derecho de notificación, asistencia y participación en los procedimientos para la concesión o negación del privilegio a la libertad bajo palabra del responsable de la comisión del delito, así como en la vista de revocación.**

Esta política pública pretende lograr la **integración activa** de la víctima en los procedimientos posteriores a la convicción del autor del delito, y en particular, su participación en si al convicto se le concede, revoca o modifica sustancialmente las condiciones para el disfrute del privilegio de libertad bajo palabra. Fue concebida como un paso adicional en los componentes que integran nuestro "sistema de Justicia Criminal" para salvaguardar los derechos de las víctimas de delitos de una manera no menos vigorosa que los derechos de los acusados. (Exposición de Motivos, Ley Núm. 90).

A tono con esta política pública, el Artículo 3-A de la referida Ley Núm. 90 dispone:

> "En aquellos procedimientos que se celebren con motivo de la concesión o modificación del privilegio a la libertad bajo palabra, y en la vista final para su revocación **se garantizará a la víctima del delito por el cual fue convicto el liberado o la persona recluida, los siguientes derechos:**
>
>> (1)   Comparecer, ya sea oralmente o por escrito, **para presentar ante la Junta su opinión sobre:**
>>
>>> (a)   La determinación que en su momento deba tomarse con relación al beneficio del privilegio, y

(b) el impacto económico, emocional o físico que ha causado la comisión del delito sobre la víctima y su familia.

(2) Estar presente como observador en la vista.

(3) Mediante solicitud al efecto, testificar en la vista en ausencia del liberado o confinado."

Notamos pues, que este precepto legal establece el derecho de la víctima de delitos a "opinar" en esos procedimientos. Como corolario de tal derecho Angueira Navarro reclama examinar el expediente de Agapito Pérez Cruz.

El único fundamento de la Junta para negárselo –que encontró eco en el Circuito de Apelaciones– la confidencialidad del expediente, no accesible según el Art. 7 de su propia Ley.[5] **Erró.**

Las etiquetas legislativas de "confidencialidad" deben evaluarse frente al derecho de acceso a información invocado por el ciudadano, dada la estrecha correspondencia que existe entre la libre expresión y la libertad de información. Soto v. Srio. de Justicia, 112 D.P.R. 477, 485 (1982). Inherente a la concepción democrática se encuentra la participación. Sabemos que para que

---

[5] Núm. 118 de 22 de julio de 1974, según enmendada (4 L.P.R.A. sec. 1507). Reza:

"Toda la información obtenida por la Junta o por alguno de sus funcionarios o empleados, en el desempeño de sus deberes oficiales **será de carácter confidencial y no podrá ser divulgada revelando el nombre del confinado en forma alguna excepto para propósitos directamente relacionados con la administración de la justicia en casos criminales**, o cuando, comprobado por la Junta que existe un interés legítimo en la información solicitada, medie el consentimiento voluntario y por escrito del confinado o liberado afectado por la divulgación o el de la persona que tenga al confinado o liberado bajo su custodia legal

ésta sea inteligente tiene que estar anclada en un constante flujo de información o en la posibilidad de acceso necesaria para el ejercicio responsable del derecho y el deber de cada ciudadano de tomar parte en los asuntos que le conciernen. E. Ramos Rivera, La Libertad de Información: Necesidad de su Reglamentación en P.R., 44 Rev. Jur. U.P.R. 67, 69 (1975).

Sin embargo, este derecho de información no es absoluto; puede ser limitado por el Estado de existir intereses apremiantes que lo justifiquen. Aunque en Puerto Rico no existe una legislación uniforme que provea normas y requisitos para la retención de información gubernamental, cuando se levanta la bandera de confidencialidad, el reclamo gubernamental puede enmarcarse en una ley específica o en los privilegios de "información oficial" recogidos por las Reglas 31 y 32 de Evidencia. Para uno y otro caso hemos determinado los exámenes judiciales bajo los cuales evaluaremos la objeción de confidencialidad vis a vis el pedido de información.

Como norma general, un reclamo de confidencialidad por el Estado sólo puede prosperar cuando éste pruebe de forma precisa e inequívoca cualquiera de las siguientes: 1) una ley así lo declara; 2) la comunicación está protegida por alguno de los privilegios evidenciarios que puedan invocar los ciudadanos; 3) revelar la información pueda lesionar derechos fundamentales de terceros; 4) se trate de la identidad de un confidente; o 5) sea información oficial conforme la Regla 31 de Evidencia. Santiago v. Bobb, 117 D.P.R. 153, 159 (1986).

---

por estar éste incapacitado para otorgar tal

Toda **ley** que pretenda ocultar información a un ciudadano bajo el palio de la confidencialidad, tiene que justificarse a plenitud y contener normas claras y precisas que permitan identificar adecuadamente el material y las circunstancias en que habrá de aplicarse la norma de accesibilidad. Ello se satisface, si la regulación gubernamental: a) cae dentro del poder constitucional del Gobierno; b) propulsa un interés gubernamental importante o sustancial; c) el interés gubernamental no está relacionado con la supresión de la libre expresión; y d) la restricción concomitante del derecho a la libre expresión no es mayor que la esencial para propulsar dicho interés.

Aquella legislación que no contenga estándares apropiados para determinar el tipo de documento e información que habrá de estar sujeta al escrutinio público y que, por el contrario, establezca una norma de confidencialidad absoluta, no puede superar el rigor de la cláusula constitucional que garantiza el derecho a la libre expresión. Soto v. Srio. de Justicia, supra, 495.

Por otro lado, cuando ante un reclamo de acceso a información, el Estado levanta el **privilegio de confidencialidad recogido en la Regla 31[6] de Evidencia** sobre información oficial,

---

consentimiento."

[6] (A) Según usada en esta Regla, "información oficial" significa información adquirida en confidencia por un funcionario o empleado público en el desempeño de su deber y que no ha sido oficialmente revelada ni está accesible al público hasta el momento en que se invoca el privilegio.

(B) Un testigo tiene el privilegio de no divulgar una materia por razón de que constituye información oficial, y no se admitirá evidencia sobre la misma si el tribunal concluye que la materia es información oficial y su divulgación está prohibida

para dictaminar si la información fue adquirida en confidencia –y por lo tanto así cobijada– los tribunales considerarán el tipo de documento en cuestión, los trámites usuales de la agencia al recibir ese tipo de información, quién tiene acceso y el uso que generalmente tiene el documento, e incluso, su contenido. López Vives v. Policía de P.R. 118 D.P.R. 219 (1987). Bajo esta óptica, hemos favorecido un análisis de la totalidad de las circunstancias que rodean la información, así como su propia naturaleza. Santiago v. Bobb, supra, pág. 162.

Luego de superada esta primera etapa, de resultar ser información obtenida en confidencia, el inciso (B) de la Regla 31 requiere como segundo paso, un balance de intereses que se realizará de forma estricta a favor del reclamante de la solicitud y en contra del privilegio. Para que el Estado pueda prevalecer, tiene que demostrar la existencia de intereses apremiantes de mayor jerarquía que los valores protegidos por el derecho ciudadano a información. Noriega v. Hernández Colón, 130 D.P.R. 919, 938 (1992).

Por su parte, la Regla 32 de Evidencia[7] –**privilegio sobre la identidad de informante–confidente–,** protege el nombre del

---

por ley, o que divulgar la información en la acción sería perjudicial a los intereses del gobierno del cual el testigo es funcionario o empleado.

[7] Dispone:

"Una entidad pública tiene el privilegio de no revelar la identidad de una persona que ha suministrado información tendente a descubrir la violación de una ley del Estado Libre Asociado de Puerto Rico o de los Estados Unidos de América, si la información es dada en confidencia por el informante a un funcionario del orden público, a un representante de la agencia encargada de

confidente pero no la información por éste ofrecida; salvo que a través de la misma se identifique la fuente.

En resumen, desprovisto nuestro ordenamiento de una legislación uniforme, el análisis judicial requerido ante un reclamo de confidencialidad dependerá de la excepción invocada por el Gobierno. Según hemos visto, el caso ante nos, la Junta opone al derecho a información de Angueira Navarro el Art. 7 de su Ley orgánica.

Dicho estatuto caracteriza como **confidencial** toda la información que obtenga la Junta o cualquiera de sus empleados en el desempeño de sus deberes oficiales. De ordinario, un estatuto que niega acceso ciudadano a información en manos del Estado, requiere un análisis bajo el escrutinio judicial estricto. Sin embargo, la disposición de ley ante nos, establece tres excepciones al manto de confidencialidad y permite su divulgación: 1) **para propósitos directamente relacionados con la administración de la justicia en casos criminales**; 2) cuando se compruebe la existencia de un interés legítimo en la información solicitada; o 3) cuando medie el consentimiento voluntario y escrito del confinado o liberado.

IV

---

la administración o ejecución de la ley que se alega fue violada o a cualquier persona con el propósito de que la transmitiera a tal funcionario o representante. Evidencia sobre dicha identidad no será admisible a menos que el tribunal determine que la identidad de la persona que dio la información ya ha sido divulgada en alguna otra forma, o que la información sobre su identidad es esencial para una justa decisión de la

Precisamente, aquí quien solicita la información es la víctima de delito con el único propósito de emitir una "opinión" informada sobre la determinación de la concesión del privilegio de libertad bajo palabra a uno de sus ofensores. Ese trámite, conforme el Art. 7 de la Ley, está "directamente relacionado con la administración de la justicia" en un caso criminal. Por ello, la divulgación de tal información debe considerarse y permitirse. Negarle a la víctima el acceso al expediente de su ofensor significaría que la Asamblea Legislativa reconoció sólo pro-forma el derecho a opinar, pues, sustancial y prácticamente le haría imposible ejercerlo informada y adecuadamente. **Carecería de sentido espiritual y pragmático esta importante legislación**.

No obstante, aclaramos que dicho acceso no es irrestricto. El principio de confidencialidad recogido en el aludido Art. 7, persigue proteger la independencia de criterio de la Junta y a la par, la participación ciudadana en el proceso evaluativo del confinado para propósito de concluir el grado de rehabilitación y seguridad que representa de serle otorgada la libertad bajo palabra, y los ajustes institucionales y terapéuticos alcanzados.

Dentro de este último aspecto, la Junta recibe los informes de evaluación sicológica y siquiátrica que le han sido practicadas a los confinados, por entidades tales como el Negociado de Evaluación y Asesoramiento, Servicios de Salud Mental Correccional y Hospital Correccional Forense Siquiátrico. En todos y cada uno de los informes que dichas entidades proveen aplican las disposiciones del Código de Salud Mental –Ley Núm.

---

controversia, particularmente cuando es esencial a la

116 de 12 de junio de 1980 y el Reglamento 52 de Instituciones de Salud Mental— por virtud del cual las evaluaciones e informes son de carácter confidencial y su divulgación sujeta a autorización escrita del paciente o **por orden del tribunal.**

Reconocemos pues, que la Junta está obligada a salvaguardar el mandato de ley en lo referente a los documentos de índole médica que integran el expediente. De igual forma debe garantizar la seguridad de aquellas personas que aportaron su opinión para el proceso evaluativo del confinado. No tan sólo para viabilizar la seguridad de terceros frente al confinado, sino de posibles confrontaciones entre esos terceros y las víctimas de delito.

**A tal efecto, nuestro mandato en este caso (y demás análogos) sujeta el acceso a las limitaciones antes mencionadas. Conlleva también una orden protectora judicial permanente, so pena de desacato, para asegurar que no se revelen las fuentes de información y las víctimas se comprometan a utilizar la información exclusivamente para el fin reclamado, no la divulgación pública. Garantizamos así sus derechos, los del ofensor y terceros.**

Finalmente, es menester recordar el alcance de la intervención de la víctima de delito. Su opinión es sólo otro factor a considerar por la Junta. No puede configurarse el derecho a opinar de Angueira Navarro como un poder de veto. Pueblo v. Dávila Delgado, res. en 20 de mayo de 1997, 143 D.P.R. ___ (1997). La determinación sobre el grado de rehabilitación del confinado y si éste está calificado y capacitado para continuar

---

defensa del acusado."

su sentencia mientras se reintegra a la sociedad es prerrogativa de la Junta.

V

Se dictará la correspondiente Sentencia ordenando a la Junta de Libertad Bajo Palabra facilitarle a Angueira Navarro los documentos del expediente de Agapito Pérez Cruz, a tenor con los criterios expuestos anteriormente en la parte IV de esta Opinión.

La Sra. Angueira Navarro tendrá un término de veinte (20) días, a partir de la fecha en que concluya el examen de estos documentos para presentar, si así lo estima necesario, una moción de reconsideración ante la Junta exponiendo su opinión informada sobre la solicitud de libertad bajo palabra presentada por Pérez Cruz. En el ejercicio de la discreción que le confiere la ley, la Junta decidirá los méritos de dicha moción mediante la correspondiente resolución.

ANTONIO S. NEGRÓN GARCÍA<br>
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Katherine Angueira Navarro

    Peticionaria

       v.

Junta de Libertad Bajo          CC-1999-240    Certiorari
Palabra; Enrique García,
Presidente; Héctor
Martínez y otros

    Recurridos

Convicto Agapito Pérez Cruz
Confinado Núm. 7-74521


SENTENCIA


San Juan, Puerto Rico, a 11 de enero de 2000


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se dicta sentencia y ordena a la Junta de Libertad Bajo Palabra facilitarle a Angueira Navarro los documentos del expediente de Agapito Pérez Cruz, a tenor con los criterios expuestos anteriormente en la parte IV de esta Opinión.

La Sra. Angueira Navarro tendrá un término de veinte (20) días, a partir de la fecha en que concluya el examen de estos documentos para presentar, si así lo estima necesario, una moción de reconsideración ante la Junta exponiendo su opinión informada sobre la solicitud de libertad bajo palabra presentada por Pérez Cruz. En el ejercicio de la discreción que le confiere la ley, la Junta decidirá los méritos de dicha moción mediante la correspondiente resolución.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


                        Isabel Llompart Zeno
               Secretaria del Tribunal Supremo