EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hon. José F. Aponte Hernández, Hon. Pedro J. Cintrón Rodríguez Hon. Héctor A. Torres Calderón<br><br>    Peticionarios<br><br>        vs.<br><br>Hon. Roberto Sánchez Ramos<br><br>    Recurrido | Certiorari<br><br>2008 TSPR 81<br><br>174 DPR \_\_\_\_ |

Número del Caso: CC-2008-36

Fecha: 14 de mayo de 2008

Tribunal de Apelaciones:

        Región Judicial de San Juan

Juez Ponente:

        Hon. Carlos A. Cabán García

Abogados de la Parte Peticionaria:

        Lcdo. Richard W. Markus
        Lcdo. Manuel D. Herrero
        Lcdo. Carlos E. Pérez Acosta
        Lcda. Janille Rodríguez Beamud

Abogados de la Parte Recurrida:

        Lcdo. Salvador J. Antonetti Stutts
        Hon. Procurador General de Justicia
        Lcda. Vivian I. González
        Secretaria Auxiliar de Litigios
        Lcda. Claudia Juan García

Materia: Solicitud de Documentos


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Hon. José F. Aponte Hernández,
Hon. Pedro I. Cintrón Rodríguez,
Hon. Héctor A. Torres Calderón

    Peticionarios               CC-2008-36       *CERTIORARI*

       vs.

Hon. Roberto Sánchez Ramos

    Recurrido


RESOLUCIÓN


San Juan, Puerto Rico a 14 de mayo de 2008

Atendida la solicitud de *certiorari* presentada por la parte peticionaria, se provee no ha lugar.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió Opinión disidente. El Juez Asociado señor Rivera Pérez expediría.


               Aida Ileana Oquendo Graulau
           Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Hon. José F. Aponte Hernández,
Hon. Pedro I. Cintrón Rodríguez,
Hon. Héctor A. Torres Calderón

    Peticionarios             CC-2008-36      *CERTIORARI*

       vs.

Hon. Roberto Sánchez Ramos

    Recurrido

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 14 de mayo de 2008

Las sentencias, opiniones y actuaciones que se emiten o se llevan a cabo por este Tribunal tienen, entre otras, una característica muy especial, cual es, que se asemejan al artefacto conocido como el "*boomerang*"; esto es, indefectiblemente regresan en el futuro a atormentar a aquellos miembros del Tribunal que en un momento determinado las suscribieron, "reclamando o exigiendo" éstas su aplicabilidad a hechos, personas, o situaciones que no fueron contempladas o previstas por los Jueces en el momento en que fueron suscritas o realizadas.

A nuestro juicio, el presente caso plantea una de esas situaciones que en el futuro le harán la vida incómoda o imposible, desde un punto de vista

jurídico, a la mayoría de los integrantes del Tribunal que, erróneamente, han suscrito el no ha lugar decretado en el presente caso. Se trata de un recurso de *certiorari* radicado por los peticionarios, todos miembros de la Cámara de Representantes de Puerto Rico, en revisión de una sentencia emitida por el Tribunal de Apelaciones, determinación judicial que una mayoría de los integrantes del Tribunal erróneamente avala hoy.

Mediante la equivocada sentencia que emitiera el foro apelativo intermedio se determinó que el mero hecho de que el Departamento de Justicia le informe a una de las Cámaras Legislativas --la cual, en ese momento, lleva a cabo una investigación sobre un informe del Contralor de Puerto Rico-- que la investigación que realiza el Departamento está inconclusa es suficiente fundamento para impedir que el Secretario de Justicia divulgue cualquier tipo de información que le sea requerida sobre el asunto por la cámara legislativa en cuestión; ello sin importar la información que se requiere y el período de tiempo que lleva el Departamento de Justicia supuestamente investigando el asunto y las razones para dicha demora irrazonable.

El presente caso se refiere a un informe del Contralor de Puerto Rico, respecto a una auditoría realizada en el Municipio de Guayama, que reveló la comisión de "serias violaciones de ley" y que fue referida al Departamento de Justicia de Puerto Rico a finales del

<u>1999</u>. Conforme expresara el Secretario de Justicia, y no obstante haber transcurrido al día de hoy en exceso de ocho años, los resultados de dicha auditoría todavía se encuentran "bajo investigación". Tampoco se sabe por cuánto tiempo adicional permanecerá dicho asunto en el "limbo investigativo" que ha creado el Secretario y que la Mayoría avala por *"fiat judicial"*.

De lo que se trata es de dejar al <u>arbitrio y discreción absoluta</u> del Departamento de Justicia por cuánto tiempo esa agencia puede demorar o retrasar una investigación sobre alegada conducta impropia o ilegal realizada por empleados públicos. <u>Ningún funcionario, sea éste quien sea, puede tener esa clase de discreción absoluta</u>. El poder absoluto o irrestricto corrompe, prestándose, desafortunadamente, para posibles actuaciones impropias e ilegales de parte de las distintas Ramas de Gobierno.

I

El 7 de febrero de 2005, la Cámara de Representantes de Puerto Rico, a los fines de investigar los hallazgos del Informe del Contralor M-00-15 sobre el Municipio de Guayama y los trámites realizados en el Departamento de Justicia en relación a dicho asunto, aprobó la Resolución de la Cámara Número 412. Para efectuar tal encomienda, la Cámara de Representantes requirió, mediante orden

judicial, la comparecencia del Secretario de Justicia a una <u>vista ejecutiva</u> a celebrarse el 20 de marzo de 2007.

La referida vista ejecutiva tenía el objetivo de que el Secretario de Justicia, Hon. Roberto Sánchez Ramos, compareciera personalmente a contestar ante la Comisión Conjunta sobre Informes Especiales del Contralor las siguientes interrogantes:

1. <u>Las razones por las cuales se cerró en el año 2000, la investigación referida por la Oficina del Contralor de Puerto Rico sobre el Informe de Auditoria M-00-15.</u>

2. <u>Las razones por las cuales se reabrió en el 2002, la investigación referida por la Oficina del Contralor de Puerto Rico sobre el Informe de Auditoria M-00-15.</u>

3. Quiénes fueron (o son) las personas <u>a cargo del caso</u> bajo investigación, <u>excepto</u> nombres de confidentes.

4. <u>Por qué no ha concluido la investigación, cuándo va a concluir, qué justifica una demora de tantos años con respecto a un Informe del Contralor sometido al Departamento de Justicia y que imputa irregularidades en el manejo de ciertos fondos públicos en dicho municipio</u> y con respecto a una compañía de construcción, <u>específicamente nombrada en el informe</u> y cuyos hallazgos el Contralor menciona <u>con nombre y apellido las personas</u> que participaron en el alegado uso de dinero ilegal pagado a cierta compañía de construcción. (Énfasis suplido.)

El Secretario de Justicia —luego de, originalmente, negarse a hacerlo— compareció finalmente, limitándose a expresar que la investigación sobre el Informe del Contralor M-00-15 <u>continuaba activa</u> en la División de Integridad Pública del Departamento de Justicia. En cuanto a la <u>demora</u> de la investigación, expresó que la norma en

su dependencia es que cada fiscal, agente u otro personal de apoyo, tiene la obligación de descargar sus deberes de manera diligente y cualquier desvió en el cumplimiento de los dichos deberes no será tolerado. No obstante, destacó que consideraciones de prudencia y política pública, enmarcadas en la ley orgánica del Departamento de Justicia, le impedían realizar comentarios adicionales hasta tanto concluya la investigación y se anuncien sus hallazgos. No explicó la demora transcurrida como tampoco informó cuándo vislumbraba la conclusión de la investigación.

Inconforme, el Presidente de la Cámara de Representantes y los Presidentes de las Comisiones de Integridad Pública y la Comisión Conjunta sobre Informes Especiales del Contralor, solicitaron de la Sala de San Juan del Tribunal de Primera Instancia que se les hiciera entrega del expediente administrativo relacionado a la investigación en cuestión, ya que el privilegio de confidencialidad no podía ser invocado ante el organismo legislativo. El tribunal de instancia denegó la solicitud y ordenó que la información fuera mantenida en un expediente investigativo, el cual no podía ser objeto de inspección ni divulgación hasta que culmine la investigación.

Oportunamente, el Presidente de la Cámara de Representantes y los presidentes de las antes mencionadas comisiones, acudieron ante el Tribunal de Apelaciones,

foro que <u>confirmó</u> la decisión de no obligar al Secretario a divulgar la información solicitada hasta que culmine la investigación en curso, <u>culminación para la cual, repetimos, el Departamento de Justicia no puede brindar fecha cierta ni aproximada.</u>

De esta determinación, los representantes del referido cuerpo legislativo recurren ante este Tribunal imputándole al foro apelativo intermedio haber errado:

> . . . al resolver que la información sobre el Informe del Contralor M-00-15 recopilada por el Departamento de Justicia debe mantenerse en un expediente investigativo, y que no puede ser objeto de inspección, mientras se conduce la investigación, por la Cámara de Representantes y sus comisiones.

La mayoría de los integrantes del Tribunal acordaron <u>denegar</u> el recurso radicado. <u>Disentimos</u>; veamos por qué.

II

Las controversias sobre el derecho de los ciudadanos a solicitar acceso a información pública en manos del gobierno tienen, por lo menos, dos vertientes: (1) cuando el reclamo de acceso a la información surge como un asunto incidental en el caso y (2) cuando una persona acude ante un foro adjudicativo exclusivamente para ejercer su derecho constitucional de acceso privado a información pública. <u>Ortiz v. Panel F.E.I.</u>, 155 D.P.R. 219 (2001). En la segunda modalidad, se trata de un derecho constitucional estrechamente vinculado a la libre

expresión y la libertad de información. <u>Soto v. Srio. de Justicia</u>, 112 D.P.R. 477 (1982).


                                III

        La facultad de investigar, no hay duda, es parte inseparable del quehacer legislativo, ya que el ejercicio del poder de legislar depende, en gran medida, de la facultad que tienen los cuerpos legislativos para citar testigos a comparecer y traer los documentos pertinentes a las vistas, convocadas al amparo de una delegación autorizada por el cuerpo correspondiente. <u>Rullán v. Fas Alzamora, *et al*</u>, 2006 T.S.P.R. 5, 166 D.P.R. ____ (2006). <u>Dicho poder, naturalmente, no es absoluto.</u>


                                IV

        Como regla general, la Rama Ejecutiva --y, obviamente, su Departamento de Justicia-- puede reclamar válidamente la secretividad de información pública en un número limitado de supuestos, a saber: (1) cuando una ley o reglamento así específicamente lo declara; (2) cuando la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos; (3) cuando revelar la información puede lesionar derechos fundamentales de terceros; (4) cuando se trate de la identidad de un confidente bajo la Regla 32 de Evidencia; o, (5) cuando sea información oficial conforme a la Regla

31 de Evidencia. Angueira v. J.L.B.P. (I), 150 D.P.R. 10 (2000).

Procede que se enfatice que la Ley Orgánica del Departamento de Justicia, 3 L.P.R.A. sec. 292j, dispone que la información obtenida como resultado de una investigación que realiza será confidencial y deberá mantenerse en un expediente investigativo, el cual no podrá ser objeto de inspección, examen ni divulgación, mientras se conduce la investigación. Existe un gran interés público en mantener confidencial determinados documentos e informes ligados a la fase investigativa de un posible caso criminal y que por su naturaleza pongan innecesariamente en riesgo los resultados de una investigación en curso. Soto v. Srio. de Justicia, 112 D.P.R. 477 (1982).

V

Si bien es correcto que, como expresáramos anteriormente, la Ley Orgánica del Departamento de Justicia establece que, mientras se conduce una investigación por dicho Departamento, la información que produce ésta es de índole confidencial, no es menos cierto que la facultad de investigar que tiene la Asamblea Legislativa, para así poder legislar informadamente, es una que nunca puede ser ignorada ni, mucho menos, menospreciada. Se ha llegado a decir, por el Tribunal Supremo de los Estados Unidos, que el poder de

investigación de la Rama Legislativa es aun más importante que su función de legislar. <u>Tenny</u> v. <u>Brandhove</u>, 241 U.S. 367, 378 (1951).

Debe mantenerse presente, por otro lado, que gran parte de la información que pretende obtener en el presente caso la Cámara de Representantes del Departamento de Justicia es una que, de ser proporcionada por dicha agencia, <u>no</u> pone en peligro que se malogre dicha investigación. ¿Qué daño puede causar a la investigación que se realiza que el Departamento informe a la Cámara de Representantes el porqué no se ha culminado la investigación no obstante haber transcurrido ya en exceso de ocho años desde que se hizo el referido? ¿Cómo puede malograrse esa investigación informando cuándo entiende el Departamento que se concluirá la misma? ¿Cómo se afecta dicha investigación informando la razón para la demora? De otra parte, no se puede pasar por alto que la vista ante la Cámara de Representantes es una de índole ejecutiva; situación que minimiza la posibilidad de publicidad indebida de lo que transcurra en la misma.

De hecho, somos del criterio que la actitud asumida por el Departamento de Justicia en el presente caso es una <u>contumaz</u> ya que la información que se le solicita no afecta sustancialmente la investigación que, <u>alegadamente,</u> están realizando desde hace ocho años y que parece no tiene visos de terminar.

Por último, nos resulta verdaderamente difícil aceptar que el máximo foro judicial de este País entienda que resulta improcedente establecer una norma a los efectos de que, en esta clase de situaciones, la razonabilidad debe ser nuestro norte, esto es, que el Departamento de Justicia viene en la obligación de terminar las investigaciones que realiza dentro de un término razonable, término que se determinará caso a caso.

Este Tribunal, con mucho acierto, ha expresado que una parte no tiene el derecho a que su caso tenga vida eterna en los tribunales, manteniendo a la otra parte en un estado de incertidumbre. Municipio de Arecibo v. Almacenes Yakima, 154 D.P.R. 217 (2001); Carattini vs. Collazo Syst. Analysis, Inc., 158 D.P.R. 345 (2003).

No existe razón válida alguna para no aplicar a la presente situación el mismo principio. ¿O es que las investigaciones que realiza el Departamento de Justicia deben, en algunas situaciones particulares, permanecer inconclusas y/o tener vida eterna, evitándose de esa manera que se tome acción contra personas involucradas en los alegados hechos delictivos sobre las cuales versa la mal llamada investigación?


FRANCISCO REBOLLO LÓPEZ
Juez Asociado