Opinión disidente emitida por el
Juez Asociado Señor Re-bollo López.
Las sentencias, opiniones y actuaciones que se emiten o se llevan a cabo por este Tribunal tienen, entre otras, una característica muy especial: se asemejan al artefacto cono-cido como el bumerán. Esto es, que indefectiblemente re-gresarán en el futuro a atormentar a aquellos miembros del Tribunal que en un momento determinado las suscri- *777 bieron, “reclamando o exigiendo” su aplicabilidad a hechos, personas o situaciones que no fueron contempladas o pre-vistas por los Jueces cuando fueron suscritas o realizadas.
A nuestro juicio, este caso plantea una de esas situacio-nes que en el futuro le harán la vida incómoda o imposible, desde un punto de vista jurídico, a la mayoría de los inte-grantes del Tribunal que, erróneamente, han suscrito el “no ha lugar” decretado aquí. Se trata de un recurso de certiorari presentado por los peticionarios —todos miem-bros de la Cámara de Representantes de Puerto Rico— en revisión de una sentencia emitida por el Tribunal de Ape-laciones, determinación judicial que una mayoría. de los integrantes del Tribunal erróneamente avala hoy.
Mediante la sentencia equivocada que emitiera el foro apelativo intermedio, se determinó que el mero hecho de que el Departamento de Justicia le informe a una de las Cámaras Legislativas —la cual, en ese momento, lleva a cabo una investigación sobre un informe del Contralor de Puerto Rico— que la investigación que realiza el Departa-mento está inconclusa es suficiente fundamento para impe-dir que el Secretario de Justicia divulgue cualquier tipo de información que le sea requerida sobre el asunto por la cámara legislativa en cuestión. Esto será sin importar la información que se requiere y el período de tiempo que lleve el Departamento de Justicia supuestamente investigando el asunto y las razones para dicha demora irrazonable.
El caso se refiere a un informe del Contralor de Puerto Rico, respecto a una auditoría realizada en el Municipio de Guayama, que reveló la comisión de “serias violaciones de ley” y que fue referida al Departamento de Justicia de Puerto Rico a finales de 1999. Conforme expresara el Se-cretario de Justicia, y no obstante haber transcurrido hoy más de ocho años, los resultados de la auditoría todavía se encuentran “bajó investigación”. Tampoco se sabe por cuánto tiempo adicional permanecerá dicho asunto en el *778 “limbo investigativo” que ha creado el Secretario y que la Mayoría avala por “fíat judicial”.
De lo que se trata es de dejar al arbitrio y discreción absoluta del Departamento de Justicia por cuánto tiempo esa agencia puede demorar o retrasar una investigación sobre una alegada conducta impropia o ilegal realizada por empleados públicos. Ningún funcionario, sea éste quien sea, puede tener esa clase de discreción absoluta. El poder absoluto o irrestricto corrompe, prestándose, desafortuna-damente, para posibles actuaciones impropias e ilegales por parte de las distintas Ramas de Gobierno.
I
El 7 de febrero de 2005, la Cámara de Representantes de Puerto Rico, para investigar los hallazgos del Informe del Contralor Núm. M-00-15 sobre el municipio de Gua-yama y los trámites realizados en el Departamento de Jus-ticia en relación con dicho asunto, aprobó la Resolución de la Cámara 412. Para efectuar tal encomienda, la Cámara de Representantes requirió, mediante una orden judicial, la comparecencia del Secretario de Justicia a una vista eje-cutiva que habría de celebrarse el 20 de marzo de 2007.
La vista ejecutiva tenía el objetivo de que el Secretario de Justicia, Hon. Roberto Sánchez Ramos, compareciera personalmente a contestar ante la Comisión Conjunta so-bre Informes Especiales del Contralor las interrogantes si-guientes:
1. [L\as razones por las cuales se cerró en el año 2000, la investigación referida por la Oficina del Contralor de Puerto Rico sobre el Informe de Auditoria M-00-15.

2. [L]as razones por las cuales se reabrió en el 2002, la in-vestigación referida por la Oficina del Contralor de Puerto Rico, sobre el Informe de Auditoria M-00-15.

3. [Q]uiénes fueron (o son) las personas a cargo del caso bajo investigación, excepto nombres de confidentes.
*779 4. [P]orqué no ha concluido la investigación, cuándo va a concluir, qué justifica una demora de tantos años con respecto a un Informe del Contralor sometido al Departamento de Jus-ticia y que imputa irregularidades en el manejo de ciertos fon-dos públicos en dichos municipios y con respecto a una com-pañía de construcción, específicamente nombrada en el informe y cuyos hallazgos el Contralor menciona con nombre y apellido las personas que participaron en el alegado uso de dinero ilegal pagado a cierta compañía de construcción. (Énfa-sis suplido.) Apéndice de la Petición de certiorari, pág. 120.
El Secretario de Justicia —luego de, originalmente, ne-garse a hacerlo— compareció finalmente, limitándose a ex-presar que la investigación sobre el Informe del Contralor Núm. M-00-15 continuaba activa en la División de Integri-dad Pública del Departamento de Justicia. En cuanto a la demora de la investigación, expresó que la norma en su dependencia es que cada fiscal, agente u otro personal de apoyo, tiene la obligación de descargar sus deberes de ma-nera diligente y cualquier desvió en el cumplimiento de los dichos deberes no será tolerado. No obstante, destacó que consideraciones de prudencia y política pública, enmarca-das en la ley orgánica del Departamento de Justicia, le impedían realizar comentarios adicionales hasta tanto con-cluya la investigación y se anuncien sus hallazgos. No ex-plicó la demora transcurrida como tampoco informó cuándo vislumbraba la conclusión de la investigación.
Inconforme, el Presidente de la Cámara de Represen-tantes y los Presidentes de las Comisiones de Integridad Pública y la Comisión Conjunta sobre Informes Especiales del Contralor solicitaron de la Sala de San Juan del Tribunal de Primera Instancia que se les hiciera entrega del expediente administrativo relacionado con la investigación en cuestión, ya que el privilegio de confidencialidad no po-día ser invocado ante el organismo legislativo. El tribunal de instancia denegó la solicitud y ordenó que la informa-ción fuera mantenida en un expediente investigativo, el cual no podía ser objeto de inspección ni divulgación hasta que culmine la investigación.
*780 Oportunamente, el Presidente de la Cámara de Repre-sentantes y los presidentes de las comisiones mencionadas, acudieron ante el Tribunal de Apelaciones, foro que con-firmó la decisión de no obligar al Secretario a divulgar la información solicitada hasta que culmine la investigación en curso, para la cual, repetimos, el Departamento de Jus-ticia no puede brindar fecha cierta ni aproximada.
De esta determinación, los representantes del referido cuerpo legislativo recurren ante este Tribunal, impután-dole al foro apelativo intermedio haber errado
... al resolver que la información sobre el Informe del Contra-lor M-00-15 recopilada por el Departamento de Justicia debe mantenerse en un expediente investigativo, y que no puede ser objeto de inspección, mientras se conduce la investigación, por la Cámara de Representantes y sus comisiones. Petición de certiorari, pág. 5.
La mayoríá de los integrantes del Tribunal acordaron denegar el recurso presentado. Disentimos-, veamos por qué.
II
Las controversias sobre el derecho de los ciudadanos a solicitar el acceso a la información pública en manos del Gobierno tienen, por lo menos, dos vertientes cuando: (1) el reclamo del acceso a la información surge como un asunto incidental en el caso y (2) una persona acude ante un foro adjudicativo exclusivamente para ejercer su derecho cons-titucional del acceso privado a la información pública. Ortiz v. Panel F.E.I., 155 D.P.R. 219 (2001). En la segunda modalidad, se trata de un derecho constitucional estrecha-mente vinculado a la libre expresión y la libertad de información. Soto v. Srio. de Justicia, 112 D.P.R. 477 (1982).
*781 III
La facultad de investigar, no hay duda, es. parte inseparable del quehacer legislativo, ya que el ejercicio del poder de legislar depende, en gran medida, de la facultad que tienen los cuerpos legislativos para citar testigos a compa-recer y traer los documentos pertinentes a las vistas, con-vocadas al amparo de una delegación autorizada por el cuerpo correspondiente. Rullán v. Fas Alzamora, 166 D.P.R. 742 (2006). Dicho poder, naturalmente, no es absoluto.
IV
Como regla general, la Rama Ejecutiva —y, obviamente, su Departamento de Justicia— puede reclamar válida-mente la secretividad de información pública en un nú-mero limitado de supuestos; a. saber, cuando: (1) una ley o un reglamento así específicamente lo declara; (2) la comu-nicación está protegida por alguno de los privilegios evi-denciarlos que pueden invocar los ciudadanos; (3) revelar la información puede lesionar derechos fundamentales de terceros; (4) se trate de la identidad de un confidente am-parado por la Regla 32 de Evidencia, 32 L.P.R.A. Ap. IV, o (5) sea información oficial conforme a la Regla 31 de Evidencia, 32 L.P.R.A. Ap. IV. Angueira v. J.L.B.P., 150 D.P.R. 10 (2000).
Procede que se enfatice qué la Sec. 13 de la Ley Orgá-nica del Departamento de Justicia, 3 L.P.R.A. sec. 292j, dispone que la información obtenida como resultado de una investigación que realiza será confidencial y deberá man-tenerse en un expediente investigativo, el cual no podrá ser objeto de inspección, examen ni divulgación mientras se conduce la investigación. Existe un gran interés público en mantener confidencial determinados documentos e in- *782 formes ligados a la fase investigativa de un posible caso criminal y que por su naturaleza pongan innecesariamente en riesgo los resultados de una investigación en curso. Soto v. Srio. de Justicia, 112 D.P.R. 477 (1982).
V
Si bien es correcto que, como expresáramos anterior-mente, la Ley Orgánica del Departamento de Justicia es-tablece que mientras este Departamento conduce una in-vestigación la información que se produce es de índole confidencial, no es menos cierto que la facultad de investi-gar que tiene la Asamblea Legislativa, para así poder legis-lar informadamente, no puede ser ignorada ni mucho me-nos menospreciada. El Tribunal Supremo de Estados Unidos ha llegado a decir que el poder de investigación de la Rama Legislativa es aún más importante que su función de legislar. Tenney v. Brandhove, 341 U.S. 367, 378 (1951).
Debe mantenerse presente, por otro lado, que gran parte de la información que pretende obtener aquí la Cá-mara de Representantes del Departamento de Justicia, de ser proporcionada por dicha agencia, no pone en peligro que se malogre la investigación. ¿Qué daño puede causar a la investigación que se realiza que el Departamento in-forme a la Cámara de Representantes el porqué no se ha culminado la investigación, no obstante haber transcurrido ya en exceso de ocho años desde que se hizo el referido? ¿Cómo puede malograrse esa investigación, informando cuándo entiende el Departamento que la concluirá? ¿Cómo se afecta dicha investigación al informar la razón para la demora? De otra parte, no se puede pasar por alto que la vista ante la Cámara de Representantes es de índole eje-cutiva, situación que minimiza la posibilidad de publicidad indebida de lo que transcurra en ella.
De hecho, creemos que la actitud asumida por el Depar-tamento de Justicia en este caso es contumaz, ya que *783 la información que se le solicita no afecta sustancialmente la investigación que, alegadamente, están realizando desde hace ocho años y que parece no tener visos de terminar.
Por último, nos resulta verdaderamente difícil aceptar que el máximo foro judicial de este país entienda que re-sulta improcedente establecer una norma a los efectos de que, en esta clase de situaciones, la razonabilidad debe ser nuestro norte. Esto es, que el Departamento de Justicia está obligado a terminar las investigaciones que realiza dentro de un término razonable, término que se determi-nará caso a caso.
Este Tribunal, con mucho acierto, ha expresado que una parte no tiene el derecho a que su caso tenga vida eterna en los tribunales, manteniendo a la otra parte en un estado de incertidumbre. Carattini v. Collazo Syst. Analysis, Inc., 158 D.P.R. 345 (2003); Mun. de Arecibo v. Almac. Yakima, 154 D.P.R. 217 (2001).
No existe razón válida alguna para no aplicar a esta situación el mismo principio. ¿O es que las investigaciones que realiza el Departamento de Justicia deben, en algunas situaciones particulares, permanecer inconclusas o tener vida eterna, evitándose de esa manera que se tome acción contra personas involucradas en los alegados hechos delic-tivos sobre las cuales versa la mal llamada “investigación”?