ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MARK POMERANZ<br><br>Recurrido<br><br>v.<br><br>RODOLFO SÁNCHEZ COLBERG Y OTROS FIDEICOMISO INVERSIONES SANCAP<br><br>Peticionarios | TA2025CE00470 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Casos Núm.: FA2024CV00397 RG2024CV00251<br><br>Sobre: Cobro de Dinero, Incumplimiento de contrato, Daños y Perjuicios, Desahucio Sumario Art. 620 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de enero de 2026.

Mediante el presente recurso de *certiorari* compareció el Fideicomiso Inversiones SANCAP (en adelante, "Fideicomiso"), el Sr. Rodolfo Sánchez Colberg (en adelante, "señor Sánchez Colberg"), la Sra. Beatriz Marie Capote Ortiz (en adelante, "señora Capote Ortiz") y la Sociedad Legal de Gananciales (en adelante, "SLG") compuesta por ambos (en conjunto; "Peticionarios"). Estos solicitan que revisemos la *Orden* emitida el 21 de agosto de 2025,[1] por el Tribunal de Primera Instancia, Sala Superior de Fajardo (en adelante, "TPI"). Allí, se le denegó la solicitud de **Fideicomiso** para que reconsiderara la posposición de la resolución de sentencia sumaria, hasta tanto se culminara con el descubrimiento de prueba.[2]

Evaluada la totalidad del expediente, corresponde **desestimar** el auto de *certiorari* solicitado por haberse tornado académico. A continuación, veamos los fundamentos.

---

[1] Notificada el mismo día.
[2] *Orden* del TPI emitida y notificada el 2 de julio de 2025.

**-I-**

El **5 de mayo de 2024**, el Sr. Mark Pomeranz (en adelante, "señor Pomeranz" o "Recurrido") instó una *Demanda* por incumplimiento de contrato contra el Colectivo Group PR, LLC (en adelante, "Colectivo"), el **señor Sánchez Colberg**, la **señora Capote Ortiz** y la **SLG** compuesta por estos (en conjunto; matrimonio Sánchez-Capote).[3] En esencia, adujo que el **6 de noviembre de 2023** suscribió un contrato de Opción de Compraventa con el **señor Sánchez Colberg** —*a través del corredor de bienes raíces de Colectivo*— sobre la propiedad ubicada en el *Condominio Ocean Sixteen, Apartamento 252, Río Grande, Puerto Rico 00745* (en adelante, "Apartamento 252" o "Inmueble").[4] Dicha propiedad fue descrita en inglés como:

> [U]RBAN: Horizontal Property. Apartment number two hundred fifty-two (252), of irregular shape located on the Fifth (5) floor of Building Two of Ocean Sixteen Condominium, located at Rio Mar Road number nine six eight (968) in the Mameyes Ward of the Municipality of Rio Grande, Puerto Rico.
>
> This Apartment has an approximate area of one thousand seven hundred and one point eight eight eight (1,701.888) square feet equivalent to one hundred fifty-eight point one one (158.11) square meters. The boundaries are as follows: by the NORTH, in a distance of forty-eight feet and eleven inches (48'11") equivalent to fourteen point nine zero nine eight (14.9098) meters with aerial space of the 60 backyard of Building Two; by the SOUTH, in a distance of forty-eight feet and two inches (48'2") equivalent to fourteen point six eight one two (14.6812) meters with the common wall that separates it from Apartment number two hundred fifty-one (251), the garbage room and corridor one (1) of level five of Building Two, and aerial spaces of the yard and of a planting area of Building Two; by the WEST, in a distance of forty-seven feet and eight inches (47'8") equivalent to fourteen point five two eight eight (14.5288) meters with the common wall that separates it from Apartment number two hundred fifty-one (251), corridor number one (1) of level five of Building Two, and aerial space of the back yard of Building Two; and by the EAST, in a distance of forty-seven feet and eight inches (47'8") equivalent to fourteen point five two eight eight (14.5288 meters with aerial space of the backyard of Building Two, the common wall that separates it from Apartment number two hundred fifty-three (253), and aerial spaces of the yard and of a planting area of Building Two.
>
> The Entrance door is located on the SOUTH side of the Unit and connects with corridor number one (1) of level five of Building Two.
>
> The Unit consists of a master bedroom with a balcony, a master bathroom, a walk-in closet and a linen closet, a second bedroom with a bathroom and a walk-in closet, a great room, a kitchen, a

---

[3] Entrada Núm. 1 del caso *FA2024CV00397* en SUMAC.
[4] Anejo A & B de la Entrada Núm. 1 del caso *FA2024CV00397* en SUMAC.

laundry room, a terrace, a powder room, a foyer and an air conditioner closet.

This Apartment has assigned parking spaces number two (2) and one hundred eighty-three (183). It also has an assigned storage room identified as Storage number two hundred fifty-two (252) located in the basement level of Building Two.

The percentage share of this Apartment unit in common elements described in the master deed is zero point eight eight seven eight percent (0.8878%).

Finca #28,795 de Río Grande. Registro de la Propiedad de Carolina, Sección III.

Número de Catastro: 091-039-530-01-027.[5]

El **señor Pomeranz** solicitó que se ordenara el cumplimiento de la opción de compra y la escritura de compraventa, y que mientras se realizaba la compraventa se le concediera la posesión del **Inmueble**. Requirió, además, que se dejara sin efecto toda penalidad, renta, cargo(s) y/o partida líquida incluida a partir del 29 de febrero de 2024; y además, se condenara solidariamente al **matrimonio Sánchez—Capote** y a **Colectivo** los pagos de las sumas de $100,000.00 por los daños sufridos y $33,000.00 como honorarios por temeridad.

Posteriormente el **28 de mayo de 2024**, el **Fideicomiso** instó una *DEMANDA DE DESAHUCIO* bajo el caso núm. ***RG2024CV00251***.[6] En esencia, alegó que el **14 de mayo de 2024** advino dueña del **Apartamento 252**,[7] y que a pesar de las distintas comunicaciones y notificaciones al **señor Pomeranz**, este se negaba a desalojar y entregar el mismo. Por lo que, solicitó que se ordenara: **(1)** el lanzamiento del **Recurrido** y/o cualquier otra persona que en su nombre ocupe el **Inmueble**; **(2)** el pago de la suma de $8,000 por parte del **señor Pomeranz** al **Fideicomiso** en concepto de cánones de arrendamiento que se habían acumulados desde la radicación de la demanda hasta el desalojo; **(3)** la entrega del **Apartamento 252**, tal y como la recibió, o al

---

[5] Entrada Núm. 1 del caso *FA2024CV00397* en SUMAC.
[6] Entrada Núm. 1 del caso *RG2024CV00251* en SUMAC.
[7] Surge de la *MOCION SOLICITANDO DESESTIMACION AL AMPARO DE LA REGLA 10.2* presentada el 15 de agosto de 2024 en el caso *FA2024CV00397*, que el matrimonio Sánchez—Capote otorgó el 14 de mayo de 2024, una Escritura Núm. 6 sobre Donación a favor del Fideicomiso Inversiones SANCAP sobre el Apartamento 252 del Condominio Ocean Sixteen en Río Grande (Número de Catastro: 091-039-530-01-027/ Número de Finca: 28795). Véase, Anejo intitulado *Miunta de Presentacion al Registro* [sic] en la Entrada Núm. 30 del caso *FA2024CV00397* en SUMAC.

costo que corresponda llevarla a las condiciones originales; y, **(4)** el pago de costas, gastos y honorarios de abogado.

Tras de varias gestiones realizadas para tratar de citar y emplazar al **Recurrido** en el caso núm. ***RG2024CV00251***,[8] el TPI convirtió el proceso a uno ordinario y ordenó el correspondiente emplazamiento por edicto.[9]

En el ínterin, el **matrimonio Sánchez-Capote** presentó —en el caso núm. *FA2024CV00397*— una *MOCION SOLCITANDO DESESTIMACION AL AMPARO DE LA REGLA 10.2.*[10] Estos señalaron que el **Recurrido** no incluyó en la acción instada al titular registral —**Fideicomiso**—; y argumentaron que la anotación preventiva de demanda no confiere derechos reales ni impide transmisiones posteriores. Añadieron que el **señor Pomeranz** incumplió con sus obligaciones al no realizar el depósito ni ejercer oportunamente la opción y su extensión.

El **24 de septiembre de 2025**, el **Recurrido** solicitó que se consolidaran los casos *FA2024CV00397* y ***RG2024CV00251***.[11] En cumplimiento de orden,[12] el **matrimonio Sánchez-Capote** se opuso a la consolidación.[13] Mediante *Orden* emitida el **17 de octubre de 2024**,[14] el TPI **consolidó** ambos casos *FA2024CV00397* y *RG2024CV00251*.[15]

El **13 de noviembre de 2024**, el **señor Pomeranz** presentó una *CONTESTACIÓN A DEMANDA ENMENDADA CASO **RG2024CV00251** Y RECONVENCIÓN.*[16] Por su parte, el **18 de diciembre de 2024** el

---

[8] Véase, moción intitulada *SOLICITUD PARA EMPLAZAMIENTO POR EDICTO Y PARA QUE SE DEJE SIN EFECTO EL SEÑALAMIETO DE VISTA* en la Entrada Núm. 18 del caso *RG2024CV00251* en SUMAC.

[9] Mediante *Orden* emitida el 28 de agosto de 2024 y notificada el 28 de agosto de 2024. Entrada Núm. 19 del caso *RG2024CV00251* en SUMAC.

[10] La moción fue presentada el 15 de agosto de 2024. Entrada Núm. 30 del caso *FA2024CV00397* en SUMAC.

[11] Entrada Núm. 47 del caso *FA2024CV00397* en SUMAC.

[12] *Orden* emitida por el TPI el 27 de septiembre de 2024 y notificada el mismo día. Entrada Núm. 48 del caso *FA2024CV00397* en SUMAC.

[13] Entradas Núm. 51, 52 & 54 del caso *FA2024CV00397* en SUMAC.

[14] Notificada el 21 de octubre de 2024.

[15] Entrada Núm. 62 del caso *FA2024CV00397* en SUMAC.

[16] Entrada Núm. 68 del caso *FA2024CV00397* en SUMAC.

**matrimonio Sánchez-Capote** contestó la demanda en el caso *FA2024CV00397*.[17]

Tras trámites procesales, el **20 de mayo de 2025**, **Fideicomiso** sometió una *MOCIÓN EN SOLICITUD DE SENTENCIA SUMARIA PARCIAL SOBRE DESAHUCIO Y ENTREGA DE POSESIÓN,* en el caso núm. ***RG2024CV00251***.[18] Alegó que el **Apartamento 252** le pertenecía como titular registral, con todos los derechos incluyendo la posesión y el cobro de rentas; y, que dicho inmueble generaba obligaciones que el **señor Pomeranz** no estaba cubriendo. También, añadió que este ocupaba y poseía el **Apartamento 252**, sin tener un contrato vigente (vencido desde el 29 de febrero de 2024), ni derecho inscrito que lo ampárese; y además, desde marzo de 2024 no ha pagado renta, utilidades ni el mantenimiento. Ante ello, el **Fideicomiso** adujo que la ocupación del **Recurrido** es ilegítima y sin justificación legal, por lo que reclamó el desahucio y la restitución inmediata de la posesión.

En cumplimiento de orden,[19] el **señor Pomeranz** presentó el **17 de junio de 2025** el escrito *OPOSICIÓN A: MOCIÓN EN SOLICITUD DE SENTENCIA SUMARIA PARCIAL SOBRE DESAHUCIO Y ENTREGA DE POSESIÓN*.[20]

Mediante *Orden* emitida el **2 de julio de 2025**,[21] el TPI determinó, en lo pertinente, que:

> Atendidas la MOCIÓN EN SOLICITUD DE SENTENCIA SUMARIA PARCIAL SOBRE DESAHUCIO Y ENTREGA DE POSESIÓN, así como la OPOSICIÓN A: MOCIÓN EN SOLICITUD DE SENTENCIA SUMARIA PARCIAL SOBRE DESAHUCIO Y ENTREGA DE POSESIÓN, este Tribunal Ordena.
>
> Al amparo de la Regla 36.6 de Procedimiento Civil y lo resuelto en García Rivera v Enríquez, 153 DPR 323 (2001); Pérez v El Vocero de PR, 149 DPR 427 (1999) y León Torres v Rivera Lebrón, 204 DPR 20 (2020), entre otros, se pospone la resolución de la Sentencia Sumaria presentada y se deja en suspenso, hasta tanto hayan culminado con el descubrimiento de prueba.[22]

---

[17] Entrada Núm. 76 del caso *FA2024CV00397* en SUMAC.
[18] Entrada Núm. 95 del caso *FA2024CV00397* en SUMAC.
[19] *Orden* emitida por el TPI el 28 de mayo de 2025 y notificada el mismo día. Entrada Núm. 97 del caso *FA2024CV00397* en SUMAC.
[20] Entrada Núm. 106 del caso *FA2024CV00397* en SUMAC.
[21] Notificada el mismo día. Entrada Núm. 116 del caso *FA2024CV00397* en SUMAC.
[22] Entrada Núm. 116 del caso *FA2024CV00397* en SUMAC.

Inconforme, el **17 de julio de 2025**, **Fideicomiso** presentó una moción de reconsideración.[23] Reiteró que el **señor Pomeranz** se encontraba ocupando el **Apartamento 252** sin título válido que justificara su permanencia. Añadió que el **Recurrido** no había efectuado pago alguno de renta y gastos de mantenimiento, por lo que le solicitó la reconsideración de su determinación.

En oposición a la solicitud de reconsideración, el **señor Pomeranz** presentó su escrito el **7 de agosto de 2025**;[24] y el **Fideicomiso**, replicó el **15 de agosto de 2025**.[25] Mediante *Orden* emitida y notificada el **21 de agosto de 2025**, el TPI declaró *No Ha Lugar* la moción de reconsideración.[26]

Así las cosas, el **17 de septiembre de 2025** los **Peticionarios** recurrieron en *certiorari* ante este nos.[27] En esencia, señalaron la comisión de cuatro (4) errores por parte del TPI:

A. **PRIMER ERRROR SEÑALADO**: Erró el TPI al posponer indefinidamente la adjudicación de una moción de sentencia sumaria en un procedimiento de desahucio, que por su naturaleza procesal es sumario y debe resolverse con premura.

B. **SEGUNDO ERROR SEÑALADO**: Erró el TPI al aplicar erróneamente la Regla 36.6 de Procedimiento Civil, *supra,* pues el demandado no cumplió con los requisitos de especificar qué descubrimiento adicional era indispensable para oponerse a la sentencia sumaria. La simple invocación de posibles controversias no justifica la suspensión.

C. **TERCER ERROR SEÑALADO**: Erró el TPI al ignorar que la controversia principal sobre dominio y validez de la donación está planteada en el pleito consolidado de incumplimiento contractual, pero no constituye defensa disponible en el desahucio, cuyo único objeto es la posesión.

D. **CUARTO ERROR SEÑALADO**: Erró el TPI al dejar en suspenso la decisión, permitiendo que el demandado retenga la propiedad sin título durante un término indefinido, ocasionando perjuicio económico y jurídico al titular inscrito.

---

[23] Entrada Núm. 78 del caso *RG2024CV00251* en SUMAC.
[24] Entrada Núm. 82 del caso *RG2024CV00251* en SUMAC.
[25] Entrada Núm. 120 del caso *FA2024CV00397* en SUMAC.
[26] Notificada el mismo día. Entrada Núm. 85 del caso *RG2024CV00251* en SUMAC.; Véase, además; Entrada Núm. 125 del caso *FA2024CV00397* en SUMAC.
[27] Entrada Núm. 1 del caso *TA2025CE00470* en SUMACTA.

Mediante *Resolución* emitida el **19 de septiembre de 2025** y notificada el **22 del mismo mes y año**, se le concedió un término de diez (10) días al **señor Pomeranz** para mostrar causa por la cual debíamos expedir el auto de *certiorari*.[28] Transcurrido el plazo sin la comparecencia de dicha parte, dimos por perfeccionado el asunto para la consideración del Panel.

No obstante, este Tribunal de Apelaciones advino en conocimiento —a través del *Sistema Unificado de Manejo y Administración de Casos* (SUMAC)— que el TPI notificó el **20 de noviembre de 2025** una *Sentencia Sumaria Enmendada Nunc Pro Tunc* en el caso núm. *RG2024CV00251*.[29]

**-II-**

**-A-**

Los tribunales deben observar ciertos requisitos —previo a entrar en los méritos de un caso—, ya que su jurisdicción se encuentra circunscrita a que el mismo sea *"justiciable"*.[30]

La justiciabilidad *"[e]stá ceñida a aquellas situaciones en que estén presentes controversias reales y vivas susceptibles de adjudicación por el tribunal y donde este imparta un remedio que repercuta en la relación jurídica de las partes ante sí"*.[31] Al respecto, nuestro ordenamiento expresa:

> [s]e ha reconocido que un caso no es justiciable cuando las partes no tienen legitimación activa, cuando un asunto carece de madurez, cuando la pregunta ante el tribunal es una cuestión política, y cuando un caso se ha tornado **académico**.[32]

Entonces, un caso se torna académico cuando por el transcurso del tiempo —debido a cambios facticos o judiciales durante el trámite del litigio— el mismo pierde su carácter adversativo y el remedio que en su

---

[28] Entrada Núm. 2 del caso *TA2025CE00470* en SUMACTA.
[29] Véase, Entrada Núm. 103 del caso *RG2024CV00251* en SUMAC.
[30] *IG Builders et al. v. BBVAPR*, 185 DPR 307, 334 (2012).; *PNP v. Carrasquillo*, 166 DPR 70, 74 (2005).
[31] *IG Builders et al. v. BBVAPR, supra.*
[32] *PNP v. Carrasquillo, supra.*

día pudiera concederse no tendría efectos prácticos.[33] En fin, la *academicidad* implica la falta de adversidad, en otras palabras, la ausencia de una controversia real entre las partes. En ese sentido, la doctrina de autolimitación judicial en discusión es de aplicación durante todas las fases de un pleito, lo que incluye la etapa apelativa o revisora, ya que es necesario que exista una controversia genuina entre las partes en todo momento.[34]

Por lo tanto, es norma reiterada en nuestro ordenamiento que; *"[l]os tribunales deben ser celosos guardianes de su jurisdicción y que no tienen discreción para asumir jurisdicción allí donde no la tienen"*.[35] La jurisdicción se refiere a la capacidad que tiene un tribunal para atender y resolver controversias sobre determinado aspecto legal.[36] Por lo cual, la Regla 83 de nuestro Reglamento nos faculta para desestimar un recurso si carecemos de jurisdicción para acogerlo por cualquiera de las instancias que a continuación reseñamos:

> (B) Una parte podrá solicitar en cualquier momento la desestimación de un recurso por los motivos siguientes:
>   1) que el Tribunal de Apelaciones carece de jurisdicción;
>   2) que el recurso fue presentado fuera del término de cumplimiento estricto dispuesto por ley sin que exista justa causa para ello;
>   3) que no se ha presentado o proseguido con diligencia o de buena fe;
>   4) que el recurso es frívolo y surge claramente que no se ha presentado una controversia sustancial o que ha sido interpuesto para demorar los procedimientos;
>   5) **que el recurso se ha convertido en académico.**
> (C) El Tribunal de Apelaciones, a iniciativa propia, podrá desestimar un recurso de apelación o denegar un auto discrecional por cualesquiera de los motivos consignados en el inciso (B) precedente.[37]

De conformidad con lo antes señalado, los tribunales tenemos el deber de desestimar todo pleito que haya advenido académico y no tenemos discreción para negarnos a ello, dado que no existe autoridad

---

[33] *Angueira v. JLBP*, 150 DPR 10, 19 (2000).
[34] *Báez Díaz v. ELA*, 179 DPR 605, 617 (2010).
[35] *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 250 (2012).; *SLG Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882 (2007).
[36] *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014).
[37] Regla 83 inciso (B) y (C) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 115, 215 DPR __ (2025).

judicial para acogerlo.[38]

**-III-**

En suma, los **Peticionarios** presentaron el recurso de *certiorari* que nos ocupa con el fin de atacar la denegatoria del TPI a reconsiderar la *Orden* emitida y notificada el 2 de julio de 2024 en el caso núm. *RG2024CV00251*.[39] Allí, se pospuso la resolución de la solicitud de sentencia sumaria presentada por **Fideicomiso** hasta que se concluyera con el descubrimiento de prueba.[40]

No obstante, a través del *Sistema Unificado de Manejo y Administración de Casos* (SUMAC), advinimos en conocimiento de que el **20 de noviembre de 2025**, el TPI notificó la *Sentencia Sumaria Enmendada Nunc Pro Tunc* en el caso núm. *RG2024CV00251*.[41] Dicha sentencia provocó que los planteamientos de los **Peticionarios** se tornaran académicos, ya que fue atendida su solicitud de sentencia sumaria.[42] Es decir, nos encontramos ante un asunto no justiciable, por lo que procede la desestimación del recurso presentado.

**-IV-**

Por los fundamentos antes expresados, se **desestima** el presente recurso de *certiorari* por academicidad.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[38] *Moreno v. UPR II*, 178 DPR 969, 974 (2010).

[39] Véase, Entrada Núm. 116 del caso *FA2024CV00397* en SUMAC.

[40] *Íd.*

[41] Véase, Entrada Núm. 103 del caso *RG2024CV00251* en SUMAC.

[42] Cabe señalar que el caso *RG2024CV00251* estaba consolidado con el caso *FA2024CV00397*. Sin embargo, es preciso indicar que el caso *FA2024CV00397* fue desestimado por el TPI mediante *Sentencia* emitida el 10 de noviembre de 2025 y notificada el 13 de noviembre de 2025. Véase, Entrada Núm. 148 del caso *FA2024CV00397* en SUMAC.