Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| ROBERTO QUIÑONES RIVERA<br><br>Recurrido<br><br>V.<br><br>VÍCTOR MALDONADO VÁZQUEZ, YAZMÍN ONEILL MONTALVO, BRENDA CORDERO MORALES Y OTROS<br><br>Peticionarios | TA2026CE00262 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2024CV06732<br><br>Sobre:<br>Daños |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 26 de marzo de 2026.

El 3 de marzo de 2026, compareció ante este Tribunal de Apelaciones, el Gobierno de Puerto Rico (en adelante, Estado), representado por la Oficina del Procurador General de Puerto Rico, mediante *Petición de Certiorari*. Nos solicita la revisión de la *Orden* emitida el 26 de enero de 2026 y notificada el 27 de enero de 2026 por el Tribunal de Primera Instancia, Sala Superior de Bayamón.

Por los fundamentos que expondremos, expedimos el auto de *certiorari* y revocamos la *Orden* recurrida. Consecuentemente, se ordena al Tribunal de Primera Instancia celebrar una vista para determinar con especificidad, qué información está sujeta al descubrimiento de prueba, y qué otra no, en virtud de los criterios de pertinencia y la confidencialidad que pauta la Ley Núm. 8-2017, *infra.*

**I**

El caso que nos ocupa tiene su génesis en una acción en daños y perjuicios, incoada el 18 de octubre de 2024, por el señor Roberto Quiñones Rivera (en adelante, el recurrido), en contra de Víctor Maldonado Vázquez, el Superintendente Correccional de la Institución Correccional 501 del Complejo Correccional de Bayamón y otros funcionarios de dicha institución, por unos alegados daños causados por las actuaciones de los demandados que ha impedido que este consiga trabajo en la Institución Correccional. El 8 de enero de 2025, el recurrido enmendó dicha demanda para acumular al Estado como codemandado.

Luego de que las partes demandadas fueron debidamente emplazadas, y tras varias incidencias procesales innecesarias pormenorizar, el 19 de marzo de 2025, el Estado presentó su *Contestación a Demanda Enmendada*. Superados varios trámites procesales adicionales, los funcionarios codemandados presentaron una *Moción de Desestimación* el 14 de abril de 2025, en la que solicitaron se desestimara el pleito en cuanto a ellos en su carácter personal.[1] El 7 de mayo de 2025, el foro primario emitió una *Resolución Interlocutoria*, en la que declaró No Ha Lugar la aludida moción de desestimación. Con posterioridad, un Panel Hermano dictó una *Sentencia* el 24 de julio de 2025, en la cual desestimó la demanda contra los funcionarios codemandados en su carácter personal.[2]

Por otro lado, el recurrido le cursó al Estado un *Primer Interrogatorio y Producción de Documentos* el 8 de mayo de 2025, según informaron al tribunal el 9 de mayo de 2025. En lo pertinente

---

[1] Dicha moción se radicó al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V.
[2] *Véase Quiñónez Rivera v. Maldonado Vázquez et al.*, *Sentencia*, TA2025CE00058.

a la controversia ante nuestra consideración, la pregunta núm. 28 leía de la siguiente manera:

> 28. Sobre **todos y cada uno de los Oficiales de Custodia y/o funcionarios codemandados** someta:
>
> a) Someta expediente de querellas administrativas presentadas contra estos por violaciones a la ley o a cualquier reglamento de la Administración de Corrección.
>
> b) Indique donde están asignados a trabajar a la fecha de la contestación de este Interrogatorio, y desde que fecha fueron asignados al nuevo puesto.
>
> c) Someta expediente de personal completo de todos y cada uno de los funcionarios codemandados.
>
> d) Indique si los funcionarios codemandados de referencia fueron disciplinados por los hechos a los que se refiere la demanda. (Énfasis en original).

El interrogatorio fue contestado por el Estado el 8 de julio de 2025, según certificó el recurrido el 16 de junio de 2025. A través del mismo escrito, el recurrido certificó que había enviado al Estado una carta al amparo de la Regla 34.1 de las Reglas de Procedimiento Civil, notificándole sus objeciones a las contestaciones al interrogatorio.

Transcurridos varios trámites procesales, el recurrido presentó una *Moción para que se Ordene Descubrir lo Solicitado y/o se Anote la Rebeldía e Impongan Sanciones,* el 2 de septiembre de 2025, en donde afirmó que el Estado no había contestado su requerimiento, por lo que, solicitó al foro primario que emitiera una orden para compeler al Estado a contestar. El 19 de septiembre de 2025, el foro *a quo* emitió una *Orden,* en la que dispuso: "No habiéndose presentado oposición, se declara Ha Lugar. Tiene el ELA 20 días para suplementar contestación a interrogatorio".[3]

Tras otros trámites procesales, incluyendo una moción para que se le anotara la rebeldía al Estado por incumplir con el

---

[3] SUMAC TPI, Entrada Núm. 102, *Orden.*

descubrimiento de prueba, el Estado compareció mediante *Moción en Cumplimiento de Orden*. En la misma solicitó al foro primario, un término de quince (15) días para producir su *Contestación Enmendada a Interrogatorios Objetados*. A través de dicha moción, el Estado adujo, por primera vez, que objetaba la pregunta número veinte y ocho (28), dado a que los documentos solicitados eran confidenciales, al amparo de la Ley Núm. 8-2017, *infra*. Específicamente, alegó que "[i]rrespectivo de la pertinencia a las alegaciones de la demanda ... la información solicitada en dicha pregunta se refiere a documentos provenientes de expedientes de personal de empleados del Estado Libre Asociado...".[4]

Concedidos los diez (10) días para acreditar la entrega de sus respuestas, el 17 de noviembre de 2025, el Estado certificó mediante *Escrito Informativo*, que había cursado al recurrido las contestaciones a las respuestas objetadas. El día siguiente, el 18 de noviembre de 2025, el recurrido presentó su réplica a la moción del Estado,[5] en la que alegó que, el Estado había incumplido con la orden del tribunal, debido a que sus respuestas eran insuficientes. En respuesta a una orden para que expresara su posición, el 25 de noviembre de 2025, el Estado presentó una *Moción en Cumplimiento de Orden*, donde, en lo pertinente, reiteró el argumento esbozado en cuanto a la confidencialidad de los expedientes solicitados.

El 26 de noviembre de 2025, el foro primario dictó una *Orden*, en la que dispuso:

> Evaluadas las posiciones de las partes, resolvemos que las objeciones del ELA, no solo son inmeritorias, sino tardías. Por tanto, tiene el ELA término final hasta el 8 de diciembre de 2025 para notificar a la parte demandante las contestaciones suplementadas a los interrogatorios 8, 18, 21, 28 y 41, so pena de sanciones y/o anotación de rebeldía.[6]

---

[4] SUMAC TPI, Entrada Núm. 124.
[5] El título de esta moción es *Réplica a Moción del ELA en Cumplimento de Orden sobre Moción Reiterando Objeciones a Contestaciones a Interrogatorio del Demandante; y Enmienda a Moción Reiterando Objeciones.*
[6] SUMAC TPI, Entrada Núm. 132.

En respuesta, el Estado solicitó una prórroga hasta el 15 de diciembre de 2025, la cual fue declarada Ha Lugar. Posteriormente, y tras otros trámites procesales, el 23 de diciembre de 2025, el Estado sometió una *Moción Informativa en Cumplimiento de Orden*, acreditando que, pese a haber sometido las contestaciones el 12 de diciembre de 2025 en el formato equivocado, había corregido el error y cumplido con someter sus contestaciones suplementadas. El 23 de diciembre de 2025, el Tribunal de Primera Instancia dictó la siguiente *Orden*: "Se toma conocimiento y se da por cumplida la orden".[7]

Superados varios trámites procesales, el recurrido presentó una moción de reconsideración de la *Orden*,[8] y entre otros asuntos, adujo que el Estado no había cumplido cabalmente con la orden del tribunal. El 16 de enero de 2026, luego de concedido un término para exponer su posición, el Estado replicó que había sometido las contestaciones correspondientes, y reiteró su objeción a someter los expedientes de los empleados, por ser estos confidenciales y no descubribles. El 27 de enero de 2026, el foro *a quo* emitió la *Orden* recurrida, en la que determinó que el Estado no había cumplido con suplementar las contestaciones a los interrogatorios. En virtud de dicha determinación, el foro primario ordenó al Estado "producir para revisión del abogado de la parte demandante los expedientes de personal y proteger su información confidencial".[9] Acaecidos varios eventos procesales, el Estado solicitó *Reconsideración*, la cual fue declarada No Ha Lugar.

Inconforme con este proceder, la Oficina el Procurador General de Puerto Rico, en representación del Estado, presentó el

---

[7] SUMAC TPI, Entrada Núm. 143.
[8] El título de esta moción es *Moción Informativa, Oposición Parcial y Reconsideración sobre Contestaciones Suplementarias a Objeciones a Interrogatorios del ELA.*
[9] SUMAC TPI, Entrada Núm. 148.

recurso que nos ocupa y le imputó al foro primario la comisión del siguiente error:

> Erró el Tribunal de Primera Instancia al ordenar la producción del expediente de personal de los Oficiales de Custodia y/o funcionarios codemandados, a pesar de que los expedientes de empleados son clasificados como confidenciales al amparo de la Ley Núm. 8-2017.

Junto a dicha petición, sometió una *Urgente Solicitud en Auxilio de Jurisdicción*, la cual fue acogida por esta Curia el 4 de marzo de 2026 mediante *Resolución*. A su vez, mediante la aludida *Resolución*, le concedimos al recurrido hasta el 16 de marzo de 2026, para que se expresara en torno al recurso de *Certiorari* incoado. El 15 de marzo de 2026, el recurrido compareció mediante una *Oposición a Certiorari*.

Con el beneficio de la comparecencia de las partes, procedemos a disponer del recurso ante nuestra consideración.

## II

### A. El Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207-208 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, enumera aquellos incidentes procesales susceptibles de revisión mediante *certiorari*. Dicha regla "fue objeto de cambios fundamentales dirigidos a evitar la revisión judicial de aquellas órdenes o resoluciones que dilataban innecesariamente el proceso pues pueden esperar a ser revisadas una vez culminado el mismo, uniendo su revisión al recurso de apelación". *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 593-594 (2011). En lo pertinente, la Regla señala:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 [...] o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, **asuntos relativos a privilegios evidenciarios**, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Regla 52.1 de Procedimiento Civil, *supra.* (Énfasis suplido).

Ahora bien, la discreción para expedir un *certiorari* bajo alguna de las precipitadas instancias "no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, [...], dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008) (citas omitidas); *Torres González v. Zaragoza Meléndez*, supra, pág. 848. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A)  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B)  Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C)  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D)  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E)  Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F)   Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G)   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[10]

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97 (énfasis omitido).

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pueblo v. Díaz de Leon*, 176 DPR 913, 938 (2009). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Íd.* Nuestro Tribunal Supremo ha expresado también que:

> [D]e ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial. *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*);* citando a *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).

---

[10] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 59, 215 DPR __ (2025).

### B. El Descubrimiento de Prueba

Impera en nuestro sistema judicial un esquema de descubrimiento de prueba extrajudicial que fomenta una mayor flexibilidad y cooperación entre las partes. El descubrimiento de prueba es "la médula del esfuerzo de destruir de una vez y para siempre la deportiva teoría de la justicia". *Alvarado v. Alemany*, 157 DPR 672, 682 (2002), citando a *Lluch v. España Service Sta.*, supra, pág. 743 (1986). Esto porque "[u]n sistema liberal de descubrimiento de prueba antes del juicio facilita la tramitación de los pleitos y evita inconvenientes, sorpresas e injusticias que surgen cuando las partes ignoran hasta el día de la vista las cuestiones y los hechos que en realidad son objeto del litigio". *Alfonso Brú v. Trane Export, Inc.*, 155 DPR 158, 167 (2001).

La Regla 23.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 23.1 regula lo concerniente al alcance del descubrimiento de prueba. En lo aquí pertinente, dicha Regla dispone que:

> (a) En general. – Las partes podrán hacer descubrimiento sobre cualquier materia, **no privilegiada**, que sea pertinente al asunto en controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte, incluyendo la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, documentos u otros objetos tangibles y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible. (Énfasis suplido).

Sólo hay dos limitaciones fundamentales al descubrimiento de prueba: "(1) no puede descubrirse materia privilegiada, según los privilegios que se reconocen en las Reglas de Evidencia, y (2) la materia que ha de descubrirse tiene que ser pertinente al asunto en controversia". *Alfonso Brú v. Trane Export, Inc.*, supra, pág. 167.

Ahora bien, nuestro más Alto Foro ha "establecido que el descubrimiento de prueba no es ilimitado. El tribunal puede limitar

el alcance y los mecanismos de descubrimiento de prueba a utilizarse, siempre que con ello se adelante la solución de controversias de forma rápida, justa y económica". *Íd.*, en las págs. 167-168.

**C. *Los Privilegios Evidenciarios y su efecto sobre el descubrimiento***

Los privilegios evidenciarios constituyen normas que, por razones de política pública, excluyen prueba que de ordinario sería descubierta como parte del descubrimiento de prueba. *Pagán v. First Hospital*, 189 DPR 509, 517 (2013). Los privilegios también se pueden entender como "unos derechos de confidencialidad que implican exclusión de evidencia para proteger al titular del derecho". Ernesto L. Chiesa, *Tratado de Derecho Probatorio: Reglas de Puerto Rico y federales*, República Dominicana, Editora Corripio, 1998, T. I, pág. 185.

En cuanto al descubrimiento de materia privilegiada, el Tribunal Supremo ha precisado que es aquella que se encuentra dentro del alcance de alguno de los privilegios reconocidos en las Reglas de Evidencia. *Ponce Adv. Med. v. Santiago González, et al.*, 197 DPR 891, 899 (2017); *E.L.A. v. Casta*, 162 DPR 1, 10 (2004); *García Rivera et al. v. Enríquez*, 153 DPR 323, 333 (2001). Consecuentemente, en ausencia de la invocación oportuna de un privilegio específico reconocido en nuestras Reglas de Evidencia, una parte en un pleito no puede objetar un requerimiento de descubrimiento de prueba bajo ese fundamento. *García Rivera et al. v. Enríquez*, supra, pág. 333. Ver también *Ponce Adv. Med. v. Santiago González, et al.*, supra, pág. 899.

Asimismo, le corresponde a quien invoca oportunamente la aplicabilidad de un privilegio, establecer *prima facie* que el mismo es de aplicación al caso. *McNeil Healthcare, LLC v. Mun. Las Piedras I*, 206 DPR 391, 409 (2021). Es sobre este quien recae el peso de

demostrar, mediante preponderancia de la prueba, "todas las razones que convierten la comunicación en privilegiada". *Pagán v. First Hospital*, supra, pág. 519. El Supremo ha pautado que, quien invoque un privilegio, tiene el deber de:

> (1) objetar la producción de los documentos, las comunicaciones o los objetos requeridos; (2) indicar expresamente el privilegio específico que pretende invocar; (3) exponer con particularidad los hechos concretos en los que se basa la aplicabilidad del privilegio; (4) fundar con claridad la existencia de los elementos legales del privilegio en cuestión, y (5) describir la naturaleza de la evidencia no producida de forma tal que, sin revelar la información privilegiada, permita a otras partes evaluar su reclamación. *Ponce Advance Med. v. Santiago González, et al.*, supra, pág. 900.

De las partes acordar "en torno a la existencia y alcance del privilegio o de mediar un acuerdo entre ellas sobre cómo proceder con la información privilegiada, la intervención de los foros judiciales será innecesaria y el procedimiento de descubrimiento de prueba continuará de manera extrajudicial". *Íd.* Por otro lado, si alguna de las partes se opone a la extensión del privilegio y asevera haber realizado los esfuerzos de buena fe que exige la Regla 34.1 de Procedimiento Civil, *supra*, "**el tribunal tendrá que resolver si el poseedor del privilegio estableció**, **mediante preponderancia de la prueba, los elementos del privilegio que invoca**". *Ponce Advance Med. v. Santiago González, et al.*, *supra*, pág. 900 (énfasis suplido).

### D. El derecho de acceso a la información pública

Como es conocido, los ciudadanos y ciudadanas de Puerto Rico gozan de un derecho de acceso a la información pública, el cual garantiza que toda persona pueda examinar el contenido de los expedientes, informes y documentos recopilados por el Estado en sus gestiones gubernamentales. *Engineering Services v. AEE*, 205 DPR 136, 145-149 (2020); *Ortiz v. Dir. Adm. de los Tribunales,* 152 DPR 161, 175 (2000). El derecho de acceso a la información pública

es un principio inherente de toda sociedad democrática, por lo que nuestro Tribunal Supremo ha sido consecuente al reconocer su carácter fundamental y constitucional. *Trans Ad de P.R. v. Junta de Subastas*, 174 DPR 56, 67 (2008); *Ortiz v. Dir. Adm. de los Tribunales*, supra; *Soto v. Srio de Justicia*, 112 DPR 477, 503 (1982). Esto, en virtud de que su ejercicio está estrechamente vinculado con los derechos de libertad de expresión, prensa y asociación. Art. II, Sec. 4, Const. ELA, LPRA, Tomo 1; Soto v. Srio de Justicia, supra, págs. 485-486. Cónsono con el mandato constitucional, nuestro.

El Tribunal Supremo de Puerto Rico, ha reconocido el derecho de acceso a información pública como un corolario necesario al ejercicio de los derechos de libertad de palabra, prensa y asociación explícitamente consagrados en el Art. II, Sec. 4 de la Constitución del Estado Libre Asociado, LPRA, Tomo 1. El propósito primordial de los derechos reconocidos en la Sec. 4 del Art. II, *supra*, es garantizar la libre discusión de los asuntos de gobierno. "Ello conlleva intrínsecamente asegurar y facilitar a todos los ciudadanos de nuestro país el derecho a examinar el contenido **de los expedientes**, informes y documentos que se recopilan en la gestión de gobierno, y que constan en las agencias del Estado". *Ortiz v. Dir. Adm. de los Tribunales*, 152 DPR 161, 175 (2000) (énfasis suplido).

Ahora bien, el derecho de acceso a la información pública se activa una vez la información solicitada por una persona es, en efecto, pública. A esos fines, el Art. l(b) de la Ley de Administración de Documentos Públicos de Puerto Rico, Ley Núm. 5 de 8 de diciembre de 1955, según enmendada, 3 LPRA sec. 1001, provee que se considerará documento público lo siguiente

> [...] [T]odo documento que se origine, conserve o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de conformidad con lo dispuesto en la sec. 1002 de este título se haga conservar que se requiera conservar permanentemente o temporalmente como prueba de las

transacciones o por su valor legal. Incluye aquellos producidos de forma electrónica que cumplan con los requisitos establecidos por las leyes y reglamentos.[11]

Sin embargo, la Alta Curia ha reconocido ciertos supuestos en los que el Estado puede alegar la confidencialidad de información pública. A esos efectos, ha resuelto que un reclamo de confidencialidad por parte del Estado puede prosperar a modo de excepción cuando este pruebe de forma precisa e inequívoca cualquiera de las siguientes: (1) **una ley así lo declara**; (2) la comunicación está protegida por algún privilegio evidenciario; (3) **la divulgación de la información puede lesionar derechos fundamentales de terceros**; (4) se trate de un confidente, según la Regla 515 de Evidencia de 2009 (32 LPRA Ap. VI), o (5) sea información oficial conforme a la Regla 514 de Evidencia de 2009 (32 LPRA Ap. VI). *Engineering Services v. AEE*, supra, pág. 148. (Énfasis suplido).

Igualmente, un reclamo gubernamental de confidencialidad válido debe contener normas claras y precisas que permitan identificar adecuadamente el material y las circunstancias en que habrá de aplicarse alguna norma de accesibilidad.[12]

A tenor con estos principios, el examen judicial al cual deberá someterse cualquier reclamo de confidencialidad de documentos e información pública dependerá de la excepción que invoque el Estado *vis-a-vis* el pedido de información. En otras palabras, **el tribunal deberá hacer un balance de intereses—a base de un análisis de la totalidad de las circunstancias—para determinar si el reclamo del Estado responde a la existencia de intereses apremiantes de mayor jerarquía que los valores protegidos por el derecho ciudadano a la información**. Ese balance se realizará de forma estricta a favor del reclamante de la solicitud y en contra

---

[11] *Engineering Services v. AEE*, supra, pág. 147.
[12] *Angueira v. J.L.B.P.*, 150 DPR 10, 24-25 (2000).

del privilegio gubernamental. *Angueira v. J.L.B.P.*, supra, págs. 25-26.

**E. Ley Núm. 8-2017 y el Reglamento Núm. 7436**

La *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico*, Ley Núm. 8-2017 (en adelante, Ley Núm. 8-2017), regula todo lo concerniente al manejo de los recursos humanos del Gobierno de Puerto Rico. 3 LPRA sec. 1469, *et seq.* En lo pertinente a la controversia ante nuestra consideración, establece el artículo 11 de dicha ley, que:

1. **Todas las agencias** mantendrán los siguientes expedientes para cada uno de sus empleados:

   a. Uno que refleje el historial completo del empleado desde la fecha de su ingreso original al servicio público hasta la fecha de su separación definitiva del servicio.

   b. Uno confidencial y separado que contenga las instrucciones, determinaciones y certificaciones de índole médica, a tenor con lo establecido por la Ley Federal para Americanos con Impedimentos (ADA).

   c. Uno que contenga copia de todos los Informes de Cambio y demás documentos e información requerida para fines de retiro.

2. **Dichos expedientes tendrán carácter confidencial, no obstante, estos podrán ser examinados para fines oficiales por empleados o funcionarios autorizados**. Todo empleado tendrá derecho a examinar su expediente de personal, previa solicitud escrita y en presencia de un funcionario o empleado de la división de Recursos Humanos autorizado para ello. La referida solicitud será sometida a dicha oficina con antelación razonable a la fecha en que se interesa efectuar el examen. El empleado podrá autorizar por escrito a otra persona para que examine el expediente. 3 LPRA sec. 1477. (Énfasis suplido).

A su vez, el Departamento de Corrección y Rehabilitación aprobó el Reglamento Núm. 7436, *Reglamento para la Administración de los Recursos Humanos del Departamento de Corrección y Rehabilitación y de la Administración de Corrección*, previo a la aprobación de la Ley Núm. 8-2017. La sección 18.1 de dicho reglamento contiene las normas en cuanto a los expedientes que mantendrá el Departamento de Corrección y Rehabilitación, el

cual contiene buena parte del lenguaje que incorporó el legislador en la Ley Núm. 8-2017. En particular, el Reglamento Núm. 7436 crea los tres tipos de expedientes a mantenerse, la naturaleza confidencial de estos, y que los mismos podrán ser examinados para "fines oficiales por empleados o funcionaros autorizados". Reglamento Núm. 7436, *supra.*

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a resolver.

**III**

En esencia, el Estado alega que erró el foro primario al ordenarle la producción de los expedientes de personal de los oficiales de custodia y/o funcionarios codemandados. Arguye que, los expedientes solicitados son confidenciales, en virtud de la Ley Núm. 8-2017, *supra,* por lo cual no están sujetos al descubrimiento de prueba.

De entrada, estamos obligados a auscultar nuestra propia jurisdicción, al amparo de las Reglas de Procedimiento Civil y las de este Tribunal. Como mencionamos anteriormente, la expedición del *Certiorari,* a diferencia de un recurso apelativo, es discrecional. En ese sentido, la Regla 52.1 de las de Procedimiento Civil, *supra,* dispone que la revisión de determinaciones interlocutorias por este Tribunal Apelativo, solo será expedida cuando traten sobre: 1) resoluciones u órdenes bajo las Reglas 56 y 57 de Procedimiento Civil, 2) la denegatoria de una moción de carácter dispositivo, 3) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, 4) asuntos sobre privilegios evidenciarios, 4) anotaciones de rebeldía o 5) en casos de familia.

En este caso, al surgir una controversia relacionada a un privilegio de información oficial, en virtud de una ley especial, colegimos que estamos facultados para expedir el recurso y revisar

la determinación del foro primario. Habida cuenta de lo anterior, procedemos a examinar el señalamiento de error.

De una minuciosa revisión del expediente, se desprende que la *Orden* recurrida se emitió en virtud de una moción de reconsideración de una orden previa del foro primario.[13] En aquella *Orden* reconsiderada, el foro primario había notificado que el Estado se encontraba en cumplimiento de las órdenes del tribunal, al haber remitido al recurrido sus contestaciones suplementadas al interrogatorio.[14] Luego de examinar las posiciones de las partes, el foro *a quo* emitió la *Orden* recurrida, en la que dispuso que, las respuestas del Estado habían sido insuficientes, por lo que debía suplir la documentación solicitada. No obstante, a la luz del derecho aplicable, la *Orden* del foro primario es insuficiente. Nos explicamos.

Según la jurisprudencia reseñada previamente, al Tribunal de Primera Instancia le corresponde determinar: (1) la existencia de un privilegio y (2) el alcance que este tendrá sobre la prueba que se quiere descubrir. Es decir, una vez las partes difieran sobre la naturaleza de cierta evidencia, es la tarea del foro primario dilucidar si un privilegio es aplicable o no.

De las respectivas argumentaciones de las partes surge que existe una diferencia de criterio en cuanto a la naturaleza de la prueba y el alcance del descubrimiento de prueba cursado. El Estado alega que los expedientes de los empleados son confidenciales y no descubribles al amparo de la Ley Núm. 8-2017, mientras que el recurrido alega tener derecho a los mismos, en virtud de su derecho fundamental al acceso a información. Además, el recurrido alega que la Ley Núm. 8-2017 no crea una barrera absoluta.

---

[13] SUMAC TPI, Entrada Núm. 144.
[14] SUMAC TPI, Entrada Núm. 143.

La Ley Núm. 8-2017 establece que los expedientes de personal generados y mantenidos por las agencias serán confidenciales. De una lectura al referido estatuto nos percatamos que el mismo no establece una lista taxativa de los documentos que son confidenciales y los que no, ni bajo qué circunstancias un tercero podrá examinarlos.

Un examen de la *Orden* recurrida revela que, a pesar de que el foro *a quo* dispuso que los expedientes de personal podían ser revisados por el abogado del recurrido, protegiendo la información confidencial de los empleados, no hizo determinaciones en cuanto a la alegación de que la Ley Núm. 8-2017, *supra*, que impide el descubrimiento de los referidos expedientes. Tampoco vemos un pronunciamiento sobre cuáles documentos específicamente están sujetos a ser examinados. En otras palabras, el foro primario debió evaluar la petición del recurrido, junto a la alegación del Estado, y, tras el debido análisis, determinar qué documentos de los que obran en los expedientes de los empleados, si alguno, pudiera ser descubierto.

A su vez, la *Orden* del tribunal mandató al Estado a "proteger la información confidencial de los empleados". No obstante, la alegación del Estado es que la totalidad de los expedientes es confidencial, por lo cual, no se pueden divulgar. Reiteramos que ante dicha alegación, debió el tribunal *a quo*, examinar y determinar qué documentos, si alguno, están cobijados por el manto de confidencialidad dispuesto en ley. El ordenarle al Estado proteger la información confidencial de los empleados, sin más, no es suficiente.

Por otro lado, en materia de acceso a información pública, el Tribunal Supremo ha que resuelto que, para efectos de su divulgación, hay que determinar si, en efecto, los documentos solicitados constituyen documentos públicos. En la eventualidad

de que dicha interrogante sea contestada en la afirmativa, le corresponde al foro primario realizar un balance de intereses—entre el derecho del ciudadano y la alegación de confidencialidad del Estado—previo a determinar si procede ordenar la producción de los documentos solicitados.

En el caso que nos ocupa el recurrido alega que el acceso a dichos documentos se debe otorgar, como parte de su derecho a información pública y su derecho fundamental a poder entablar un pleito civil. Empero, como mencionamos, la norma vigente pauta que corresponde realizar un balance de intereses, de modo que se garantice una respuesta justa. Somos del criterio que el foro primario está en mejor posición para sopesar los argumentos de las partes y realizar las determinaciones correspondientes. Razonamos que, dado a que la *Orden* recurrida del foro primario no cumple con los requisitos jurisprudenciales esbozados previamente, por lo cual amerita nuestra intervención en esta etapa de los procedimientos.

**IV**

Por los fundamentos expuestos, se expide el auto de certiorari y se revoca la *Orden* recurrida. Se devuelve el caso al Tribunal de Primera Instancia para que celebre una vista, a los fines de determinar con especificidad, qué información está sujeta al descubrimiento de prueba, y qué otra no, en virtud de los criterios de pertinencia y el carácter de confidencialidad que pauta la Ley Núm. 8-2017.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones